874 S.W.2d 107 (1994)
In the Matter of J.C.D.
No. 3-93-256-CV.
Court of Appeals of Texas, Austin.
February 16, 1994.
*108 Bob D. Odom, Odom & Hurley, Belton, for appellant.
Richard J. Miller, County Atty.; Wm. Nelson Barnes, Asst. County Atty., Belton, for appellee.
Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.
BEA ANN SMITH, Justice.
J.C.D., a minor, was adjudged delinquent after pleading guilty to murder. J.C.D. received a twenty-five year determinate sentence and was committed to the Texas Youth Commission. Two and one-half months before J.C.D.'s eighteenth birthday, the juvenile court conducted a hearing to determine whether to transfer him to the Institutional Division of the Texas Department of Criminal Justice (TDCJ) or recommit him to the Texas Youth Commission without a determinate sentence. J.C.D. appeals from the trial court's order transferring him to the TDCJ to serve the remainder of his determinate sentence. We will affirm the judgment.

BACKGROUND
On January 21, 1992, J.C.D., then sixteen years old, shot and killed another juvenile during a confrontation with a rival gang. J.C.D. was detained at the Bell County Detention Center from the date of the offense until the date of the adjudication and disposition of his case on May 13, 1992. J.C.D. judicially confessed to intentionally and knowingly causing the death of an individual by shooting him with a firearm. At the adjudication and disposition proceeding, the juvenile court found that J.C.D. had committed murder, assessed a twenty-five-year determinate sentence, and committed him to the Texas Youth Commission.
On January 14, 1993, the juvenile court held a release hearing pursuant to section 54.11 of the Family Code. See Tex.Fam. Code Ann. § 54.11 (West Supp.1994) ("Family Code"). Section 54.11 describes the procedure to determine whether a juvenile who has received a determinate sentence should, when he reaches age eighteen, continue his incarceration, and if so, where he should be confined. The statute provides:
In making a determination under this section, the court may consider the experiences and character of the person before and after commitment to the youth commission, the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed, the abilities of the person to contribute to society, the protection of the victim of the offense or any member of the victim's family, the recommendations of the youth commission and prosecuting attorney, the best interests of the person, and any other factor relevant to the issue to be decided.
Family Code § 54.11(j). J.C.D. appeals the trial court's decision that a transfer to the TDCJ was in the best interest of both the public and J.C.D. In his sole point of error, J.C.D. contends that the trial court abused its discretion by ordering the transfer.

DISCUSSION
In deciding whether the trial court abused its discretion we must determine not whether the reviewing court believes the facts present an appropriate case for the trial court's action, but whether the court acted without reference to guiding rules or principles. City of Austin v. Janowski, 825 S.W.2d 786, 788 (Tex.App.-Austin 1992, no writ) (citations omitted). If there is evidence supporting the trial court's decision, this Court may not substitute its judgment for that of the trial court. Id. Mindful of this standard, we review the evidence adduced at the release hearing.
At the release hearing, Carolyn Esparza, a social service administrator at the Giddings State Home and School, a division of the Texas Youth Commission, presented the Commission's recommendation that *109 J.C.D. remain at the Commission. She stated that J.C.D. would benefit from participation in a capital offender group program at Ayres House in San Antonio. Esparza testified that J.C.D. had been on "pre-release" level since September 1992, indicating that he was responding well to treatment, and that he had "grown a lot emotionally." Esparza reported that while at the Giddings State Home and School, J.C.D. had participated well in group activities and served as a role model for students working to achieve pre-release status. Esparza indicated that though there was gang activity at Giddings State Home and School, she knew of no participation in such activity by J.C.D., who had a good record with no significant behavioral problems. According to Esparza, the Texas Youth Commission's recommendation was an indication that they did not believe J.C.D. presented "any major risk to reoffend in a violent way."
However, the trial court also considered a psychological evaluation of J.C.D. conducted in November 1992 by a staff psychologist at the Giddings State Home who reached a different conclusion. According to this evaluation, J.C.D. was at high risk of reoffending and continued to blame his victim for the shooting. Additionally, the psychologist evaluated J.C.D.'s good behavior as an attempt to avoid detention rather than an indication of actual improvement. Finally, the psychologist concluded:
Experience with capital offenders at [Giddings State Home and School] demonstrates that a history of oppositional and anti-social behavior together with a minimal response to previous treatment efforts, both of which [J.C.D.] has, decreases the probability of successful response to the treatment offered at GSHS. While he is eligible for return to GSHS for further treatment, such an option should be reserved for youth who demonstrate the capacity to benefit from treatment and a proclivity to change which [J.C.D.] does not, despite a veneer of motivation and behavioral control. [J.C.D.] continues to require a highly structured setting in order to minimize his risk to the community.
In light of this evidence, the appellant's age, the fact that the offense involved was a murder occurring only one year before the release hearing, and other relevant factors, we cannot say that the trial court abused its discretion in ordering J.C.D. to the TDCJ. As the trier of fact, the trial court is free to determine the weight and credibility of the evidence, and so long as the trial court does not act arbitrarily or with disregard for guiding principles, we will not disturb its decision on appeal. See Garrett v. State, 847 S.W.2d 268, 270 (Tex.App.-Texarkana 1992, no writ). The recommendation of the Texas Youth Commission is only one of many factors that the trial court is instructed to consider, and the statute does not elevate that recommendation above the other factors. The statute gives the court broad discretion in making the decision to transfer juvenile defendants to the TDCJ upon reaching age eighteen, and we cannot say that the trial court abused its discretion in this case. Accordingly, we overrule the point of error and affirm the judgment of the trial court.