TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00477-CV






In the Matter of M. P.









FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. J-14,501, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING 







 This is an appeal from an order by the district court transferring M. P., appellant,
to the Texas Department of Corrections-Institutional Division (TDCID) for the completion of a
determinate sentence. See Tex. Fam. Code Ann. § 54.11 (West 1996). In a single issue on
appeal, appellant argues the district court erred in transferring him to TDCID, rather than
allowing him to remain in the custody of the Texas Youth Commission (TYC). We will affirm.


Background

 On May 8, 1996, appellant, then fourteen years old, was found to have engaged
in delinquent conduct, committing the offense of aggravated robbery. See Tex. Fam. Code Ann.
§ 54.03 (West Supp. 2000); Tex. Penal Code Ann. § 29.03(a) (West 1994). He was given a
determinate sentence of twenty-years commitment to the TYC with possible transfer to TDCID. 
See Tex. Fam. Code Ann. § 54.04(d)(3) (West Supp. 2000). In September 1998, TYC began the
process to transfer appellant to TDCID early. See Tex. Fam Code Ann. § 54.11. On March 1,
1999, less than a month before appellant turned 17, a hearing on the early-transfer motion was
held. See id. Following the hearing, the district court ordered appellant transferred from TYC
to TDCID to serve the remainder of his sentence. 


Discussion

 Appellant complains the district court erred in ordering his transfer to TDCID,
claiming his needs and the protection of society would be better served by allowing him to remain
at TYC, where he could benefit from rehabilitation programs. 


Standard of Review

 We review a trial court's decision to transfer a juvenile from TYC to TDCID under
an abuse of discretion standard, meaning we look to see whether the trial court acted arbitrarily
or unreasonably, without reference to guiding rules or principles. See In re C.L., 874 S.W.2d
880, 886 (Tex. App.--Austin 1994, no writ). If a trial court makes a decision within its
discretionary authority, we will not reverse that decision merely because we would have reached
a different result. See id. In determining whether to transfer a juvenile to TDCID, the trial court
may consider the following: the experiences and character of the juvenile before and after his
commitment to TYC; the nature of the offense and the manner in which it was committed; the
juvenile's abilities to contribute to society; the protection of the victim or the victim's family;
recommendations of the TYC and the prosecuting attorney; and any other relevant factors. See
Tex. Fam. Code Ann. § 54.11(k); In re C.L., 874 S.W.2d at 885-86.

Factual Summary

 Leonard Cucolo, a TYC program administrator, testified about TYC programs and
procedures. He said TYC has jurisdiction to keep juveniles until they are twenty-one years old. 
Cucolo explained that TYC has a "general resocialization program," in which juveniles are rated
on a five-phase system. Phase 0 is the lowest rating, at which juveniles begin, and Phase 5 is the
highest rating, which Cucolo characterized as "a discharge or release type of phase." A juvenile
arriving at TYC at Phase 0 generally can achieve Phase 4 within a year or a year and a half. 
Cucolo said that making an early transfer request involves substantial procedural protections. A
juvenile recommended for early transfer must be at least sixteen years old, have spent at least six
months in a TYC or another highly-restrictive facility, and have displayed chronic disruptive
behavior. The juvenile's record is reviewed by a special committee, and he undergoes a
psychological evaluation to determine amenability to further treatment and risk of re-offending. 
The juvenile is interviewed and allowed to give his perception of his progress and an explanation
regarding early transfer. The committee sends a report to three levels of executive administrators,
and, upon approval by all three administrators, a district court hearing on the early-transfer
motion is requested. 

 Cucolo said appellant had known since his arrival at TYC in May 1996 that he
could be transferred to TDCID. In September 1998, the process of transferring appellant to
TDCID early began, and he was assigned a psychological evaluation, reviewed by the committee,
and interviewed. Cucolo said appellant's behavior during his time at TYC was marked with a
lack of motivation and effort. Appellant refused to complete a chemical dependency program and
never progressed beyond Phase 2 in the resocialization program. Appellant was referred to the
TYC security program eighty-nine times in thirty-three months for misconduct such as disruptive
or assaultive behavior, and had continued gang activity while at TYC, wearing gang colors,
getting involved in gang assaults, and marking TYC property with gang lettering. Appellant was
referred four times to a special management plan, which is the most restrictive treatment option
at appellant's TYC facility and is the result of serious chronic disruption or assaultive behavior. 
Cucolo said TYC could offer appellant nothing more than what he had already been offered. He
testified it was unlikely that appellant would engage in treatment programs if allowed to remain
at TYC, given his lack of effort over thirty-three months at TYC. Cucolo said TYC believed that
appellant's continued placement at TYC was disruptive for the other juveniles and that the best
place for appellant was TDCID. 

 Cucolo admitted there was a substantial gang problem at TYC, and said it was not
tolerated. He said the TYC cannot predict future behavior with total accuracy. Cucolo explained
that TYC provides the following programs to juveniles: individual and group therapy; family
therapy; continuing education, including GED and college programs; and a capital offender
program. Cucolo testified that TYC had been contacted by appellant's family members, who
asked if appellant could be put on medication for attention deficit disorder (ADHD), saying he
was a different person when on his medication--calmer and more obedient. Cucolo said TYC
performed two psychological evaluations on appellant and that he was not diagnosed with ADHD
or as in need of medication.

 Appellant's stepmother, Linda Perez, testified that she thought appellant should
remain at TYC and not be transferred to TDCID. She said he needed to be on medication, and
that when on medication he was very calm and obedient. She testified she would work with TYC
and any TYC programs if appellant remained there. Perez admitted that appellant was on his
medication when he committed the aggravated robbery in 1996.

 Appellant's mother, Sandy Herrera, also testified that she thought appellant should
remain at TYC. She said she had spoken to several TYC caseworkers about appellant's need for
medication. She said she was told TYC tried not to medicate juveniles because TYC wants to
see how the juveniles do without medication. She said when appellant was on medication he was
calmer and not moving around and hyperactive. She attributed his problems at TYC to the fact
that he has moved from caseworker to caseworker. She said she had understood appellant had
almost progressed to Phase 3 on the resocialization scale but had been bumped back after an
altercation with another boy. Herrera also testified she would assist TYC with any programs
appellant was involved in if he was allowed to stay at TYC. 

 The district court, while noting the high level of involvement by appellant's family,
said, "[t]here's no record of hope," and ordered appellant transferred to TDCID. The court noted
that appellant had withdrawn himself from treatment programs and had been involved in numerous
disruptive incidents, and said it was saddened by appellant's statement when counseled about the
possibility of early transfer to TDCID that, "[I]f I have to go, I have to go." The court stated that
in making its decision to have appellant transferred, it had considered the seriousness of the
aggravated robbery offense, appellant's best interest and abilities to contribute to society at the
present time, the protection of the victim and society, and the recommendations of the TYC and
prosecuting attorney.


Conclusion

 In light of Cucolo's testimony regarding appellant's chronic disruptive and
uncooperative behavior during his time at TYC, which continued even after he knew he was being
considered for early transfer to TDCID, appellant's age, and the fact that appellant had been
confined at TYC for less than three years out of his assessed twenty-year sentence, we cannot say
the district court abused its discretion in ordering appellant transferred to TDCID. See, e.g., In
re R.G., 994 S.W.2d 309, 312-13 (Tex. App.--Houston [1st Dist.] 1999, pet. denied); K.L.M. v.
State, 881 S.W.2d 80, 85-86 (Tex. App.--Dallas 1994, no writ); In re J.C.D., 874 S.W.2d 107,
108-109 (Tex. App.--Austin 1994, no writ). We affirm the district court's order.



 


 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: March 23, 2000

Do Not Publish



TYC security program eighty-nine times in thirty-three months for misconduct such as disruptive
or assaultive behavior, and had continued gang activity while at TYC, wearing gang colors,
getting involved in gang assaults, and marking TYC property with gang lettering. Appellant was
referred four times to a special management plan, which is the most restrictive treatment option
at appellant's TYC facility and is the result of serious chronic disruption or assaultive behavior. 
Cucolo said TYC could offer appellant nothing more than what he had already been offered. He
testified it was unlikely that appellant would engage in treatment programs if allowed to remain
at TYC, given his lack of effort over thirty-three months at TYC. Cucolo said TYC believed that
appellant's continued placement at TYC was disruptive for the other juveniles and that the best
place for appellant was TDCID. 

 Cucolo admitted there was a substantial gang problem at TYC, and said it was not
tolerated. He said the TYC cannot predict future behavior with total accuracy. Cucolo explained
that TYC provides the following programs to juveniles: individual and group therapy; family
therapy; continuing education, including GED and college programs; and a capital offender
program. Cucolo testified that TYC had been contacted by appellant's family members, who
asked if appellant could be put on medication for attention deficit disorder (ADHD), saying he
was a different person when on his medication--calmer and more obedient. Cucolo said TYC
performed two psychological evaluations on appellant and that he was not diagnosed with ADHD
or as in need of medication.

 Appellant's stepmother, Linda Perez, testified that she thought appellant should
remain at TYC and not be transferred to TDCID. She said he needed to be on medication, and
that when on medication he was very calm and obedient. She testified she would work with TYC
and any TYC programs if appellant remained there. Perez admitted that appellant was on his
medication when he committed the aggravated robbery in 1996.

 Appellant's mother, Sandy Herrera, also testified that she thought appellant should
remain at TYC. She said she had spoken to several TYC caseworkers about appellant's need for
medication. She said she was told TYC tried not to medicate juveniles because TYC wants to
see how the juveniles do without medication. She said when appellant was on medication he was
calmer and not moving around and hyperactive. She attributed his problems at TYC to the fact
that he has moved from caseworker to caseworker. She said she had understood appellant had
almost progressed to Phase 3 on the resocialization scale but had been bumped back after an
altercation with another boy. Herrera also testified she would assist TYC with any programs
appellant was involved in if he was allowed to stay at TYC. 

 The district court, while noting the high level of involvement by appellant's family,
said, "[t]here's no record of hope," and ordered appellant transferred to TDCID. The court noted
that appellant had withdrawn himself from treatment programs and had been involved in numerous
disruptive incidents, and said it was saddened by appellant's statement when counseled about the
possibility of early transfer to TDCID that, "[I]f I have to go, I have to go." The court stated that
in making its decision to have appellant transferred, it had considered the seriousness of the
aggravated robbery offense, appellant's best interest and abilities to contribute to society at the
present time, the protection of the victim and society, and the recommendations of the TYC and
prosecuting attorney.


Conclusion

 In light of Cucolo's testimony regarding appellant's chronic disruptive and
uncooperative behavior during his time at