COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-180-CV

 

 

IN THE MATTER OF                                                                             

 

J.M.                                                                                                  

 

                                              ------------

 

           FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction








Appellant J.M. appeals the
trial court=s order
transferring him from the custody of the Texas Youth Commission (TYC) to the
Institutional Division of the Texas Department of Criminal Justice (TDCJ) for
the completion of his fourteen-year determinate sentence.  In two points, appellant complains that the
trial court erred by proceeding with the transfer hearing because he did not
receive reasonable notice and that the trial court abused its discretion by
transferring him to TDCJ, rather than recommitting him to TYC.  We affirm.

II.  Background Facts

The trial court committed
appellant to TYC for a fourteen-year determinate sentence after adjudicating
him delinquent of committing four counts of aggravated robbery.  After appellant served eleven months at TYC,
TYC requested that appellant be transferred to TDCJ.  The trial court held a hearing pursuant to
section 54.11 of the Texas Family Code concerning the transfer of appellant to
TDCJ or his return to TYC.  See Tex. Fam. Code Ann. ' 54.11 (Vernon Supp. 2005).  








At the February 15, 2005
transfer hearing, Leonard Cucolo, a TYC court liaison and custodian of records,
testified that appellant had engaged in 107 documented incidents of misconduct
while at TYC and was placed in the security unit twelve times.  The security unit is a program that separates
students who exhibit assaultive or disruptive behavior from the rest of the
population.  After being committed to
TYC, appellant was sent to the Marlin Unit for evaluation for sixty days.  While at Marlin, appellant engaged in
fourteen incidents of misconduct and was placed in the security unit once.  TYC later assigned appellant to the Giddings
State School and he was transferred there on June 3, 2004.  Two weeks after appellant arrived at
Giddings, he broke a peer=s jaw.  The peer required hospitalization and surgery
for his injuries.  Cucolo testified that
appellant=s behavior
at Giddings was Aextremely
poor,@ and it continued to be so even after appellant was warned that he
could be transferred to TDCJ.  In fact,
on January 30, 2005, fifteen days before the transfer hearing, appellant was
involved in an incident that put staff and peers in danger, but Cucolo did not
give details of this incident at the hearing. 
After hearing evidence from both the State and appellant, the trial
court ordered appellant to be transferred to TDCJ to serve the remainder of his
sentence.

III.  Notice of Transfer Hearing

In his first point, appellant
complains that the trial court erred by continuing with the transfer hearing
because he did not receive reasonable notice of the hearing.[2]









Section 54.11(b) of the
family code requires the trial court to notify Athe person to be transferred or released under supervision@ of the time and place of the hearing. 
Tex. Fam. Code Ann. ' 54.11(b)(1); In re J.L.S., 47 S.W.3d 128, 130 (Tex. App.C Waco 2001, no pet.).  Appellant
concedes that he was present at the transfer hearing and received notice of
it.  His sole argument is that he did not
receive adequate notice of the transfer hearing. 

The record contains a January
13, 2005 letter from Sherry L. Brown, the court coordinator for the trial
court, to TYC, appellant, appellant=s family, the State=s attorneys, and the victims of appellant=s delinquent conduct, stating that a transfer hearing was going to be
held on February 15, 2005 and that a bench warrant would be issued for
appellant two weeks before the hearing date. 
On January 25, 2005, the trial court issued a bench warrant for
appellant, setting the transfer hearing for February 15, 2005 and ordering
appellant to be transferred to the Lynn W. Ross Detention Center on February 1,
2005 to await the hearing.

At the beginning of the
transfer hearing, the trial court stated:

The Court will make note that we received [the
transfer request] on January sixth of 2005, and this case has been set within
appropriate time frames under the law.  

The law requires that we notify a number of
people of this hearing.  It requires that
we notify the person to be transferred or released, and we have notified and in
fact [J.M.] appears here today with his attorney.

 








Appellant and his attorney attended the transfer
hearing,[3]
but neither requested a continuance due to lack of notice or insufficient time
to prepare.  In fact, appellant=s attorney stated at the hearing that he A[did not] really know of any defensive issues that we were not able to
develop.@  He did, however, tell the
trial court that appellant had complained to him that he felt he had not
received notice of the hearing soon enough.[4]  At the end of the hearing, appellant=s counsel asked him if he wanted to tell the judge anything else, and
appellant told her only that he was surprised about the transfer request
because he made such an improvement while at TYC. 

The order transferring
appellant to TDCJ recited that Adue notice had been issued on all parties as required by [s]ection
54.11(b) and (d) of the Texas Family Code.@  See In re B.D., 16
S.W.3d 77, 80 (Tex. App._Houston [1st Dist.] 2000, pet. denied).  We may presume the regularity of recitations
like this in judgments.  Id.; see
also Breazeale v. State, 683 S.W.2d 446, 450-51 (Tex. Crim. App. 1985) (op.
on reh=g).  Additionally, we are entitled
to rely on a presumption of proper notice. 
See Osborn v. Osborn, 961 S.W.2d 408, 411 (Tex. App._Houston
[1st Dist.] 1997, writ denied) (stating that the law presumes that a trial
court has given proper notice prior to a hearing).  








Other courts of appeals have
held that adequate notice of the transfer hearing has been given in similar
circumstances.  In B.D., the
Houston First District Court of Appeals held that the appellant received
adequate notice when he and his counsel attended the transfer hearing and did
not request a continuance, a docket notation indicated that a bench warrant had
been signed for appellant, and the order transferring appellant to TDCJ
indicated that Adue notice
had been issued to all parties.@  16 S.W.3d at 80-81.  

Likewise, the Austin Court of
Appeals in In re T.E., held that a juvenile in a disposition
modification hearing is not entitled to service of process but only reasonable
notice.  No. 03-04-00590-CV, 2005 WL
1583463, at *2 (Tex. App._Austin July 7, 2005, no pet.) (mem. op.).  The court stated that when a child=s attorney appears, does not file a motion for continuance, and the
child and parents are present and fully advised by the trial court as to the
issues before the trial court, reasonable notice is presumed.  Id. 









Here, appellant, his
attorney, and his family were present at the transfer hearing and they did not
request a continuance.  In fact,
appellant=s counsel
stated that he did not know of any defenses that he was not able to develop
because of any time restrictions.  The
record includes a letter from the court coordinator to all parties giving them
notice of the hearing.  Further, the
trial court=s oral
findings at the beginning of the hearing recite that proper notice was given to
all interested parties, including appellant. 
Additionally, a docket notation indicates that notice of the hearing was
sent to appellant, and the order transferring him indicates that Adue notice had been issued to all parties.@ Because the record shows that appellant received adequate notice of
the transfer hearing, and we are entitled to rely on the recitations in the
judgment, we overrule his first point.[5]


IV.  Sufficiency of the Evidence

In his second point, appellant
argues that the trial court abused its discretion by transferring appellant
from TYC to TDCJ.  Specifically,
appellant argues that a review of the factors that the trial court can consider
in determining whether a transfer to TDCJ is appropriate shows that the trial
court=s decision to transfer him was arbitrary.  The State argues that there is ample evidence
to support the trial court=s determination to transfer appellant to TDCJ.

A.  Standard of Review








When reviewing the trial
court=s decision to transfer a juvenile from TYC to TDCJ, the appellate
court employs an abuse of discretion standard.  In re R.G., 994 S.W.2d 309, 312 (Tex.
App._Houston [1st Dist.] 1999, pet. denied); K.L.M. v. State, 881
S.W.2d 80, 84 (Tex. App._Dallas 1994, no writ).  If some
evidence exists to support the trial court=s decision, there is no abuse of discretion.  R.G., 994 S.W.2d at 312; K.L.M.,
881 S.W.2d at 84.  We are to review the
entire record to determine whether the trial court acted without reference to
any guiding rules and principles.  K.L.M.,
881 S.W.2d at 84.  We may not
reverse a trial court=s decision
merely because we disagree with that decision, so long as the trial court acted
within its discretionary authority.  R.G.,
994 S.W.2d at 312.  

B.  Analysis








 When a juvenile is given a determinate
sentence, upon TYC=s request to
transfer the juvenile to TDCJ, the trial court is required to hold a hearing
pursuant to family code section 54.11.  Tex. Fam. Code Ann. _ 54.11; Tex. Hum. Res. Code Ann. _
61.079(a) (Vernon Supp. 2005); In re J.D.P., 149 S.W.3d 790, 792 (Tex.
App._Fort Worth 2004, no pet.).  At
the transfer hearing, a trial Acourt may consider written reports from probation officers,
professional court employees, professional consultants, or employees of [TYC],
in addition to the testimony of witnesses.@ Tex. Fam. Code Ann. _
54.11(d).  At the conclusion of such a
hearing, the trial court may either order the return of the juvenile to TYC or
the transfer of the juvenile to the custody of TDCJ for the completion of the
juvenile=s sentence.  Id. _
54.11(i). 

 In evaluating the evidence and deciding
whether to transfer a juvenile to TDCJ, a trial court may consider the
following: (1) the experiences and character of the person before and after
commitment to TYC; (2) the nature of the penal offense that the person was
found to have committed and the manner in which the offense was committed; (3)
the abilities of the person to contribute to society; (4) the protection of the
victim of the offense or any member of the victim=s family; (5) the recommendations of TYC and the prosecuting attorney;
(6) the best interests of the person; and (7) any other relevant factor.  Id. _
54.11(k); J.D.P., 149 S.W.3d at 792. 








The trial court is not
required to consider all of the factors, and the trial court is expressly
allowed to consider unlisted but relevant factors.  In re C.L., Jr., 874 S.W.2d 880, 886 (Tex.
App._Austin 1994, no writ).  Evidence
of each factor is not required.  Id.;
see also J.D.P., 149 S.W.3d at 792.  Similarly, the trial court may assign
different weights to the factors it considers. 
C.L., Jr., 874 S.W.2d at 886; see also J.D.P., 149 S.W.3d
at 792.  In determining whether
the trial court abused its discretion, we look to see whether the trial court
acted without reference to guiding rules or principles.  See J.D.P., 149 S.W.3d at 791; see also
Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241‑42 (Tex.
1985), cert. denied, 476 U.S. 1159 (1986); In re J.C.D., 874
S.W.2d 107, 108 (Tex. App. _Austin 1994, no writ). 

Cucolo testified that
appellant=s behavior
was Aextremely poor.@  In the eleven months appellant was at TYC, he
was involved in 107 documented incidents of misconduct.  Cucolo testified that these incidents
included disruption, assault by threat of imminent bodily injury towards staff
and other youths, failing to follow staff instructions, and possession of
contraband.  On one occasion, TYC had to
restrain appellant with pepper spray after he verbally threatened the staff.








Appellant argues that it was
an abuse of discretion to transfer him to TDCJ because most of the documented
incidents were minor, giving examples of whistling at girls, smacking his lips,
and possessing extra clothes and pens. 
Appellant points to the fact that Cucolo stated that he is a Asmart kid@ and that he
was taking G.E.D. courses as evidence of the positive experience he has had at
TYC; however, appellant=s positive
academic record does not offset his negative behavioral history.  Appellant testified that he has fifty to
sixty violations for failing to follow instructions, and admitted that he
committed more than half of the 107 documented incidents.  After the April 21, 2004 incident when
appellant hit a peer, TYC placed him in the security unit for two days.  When a youth is placed in the security unit,
TYC removes him from the rest of the population for a period up to twenty-four
hours; however, the time can be extended if the youth fails to cooperate with
security staff and fails to show that he is capable of release, which is what
occurred in this case.   Additionally,
TYC placed appellant in the behavioral management program for ninety days after
he threw urine on the staff. 

Cucolo testified that
appellant has never taken responsibility for his own actions, including the
aggravated robberies for which he was committed.  Psychologist Michael Hilgers, who evaluated
appellant, stated that appellant has Aaccepted little responsibility for his behavior, instead he largely
blamed others for provoking him and in some instances denied that the
misconduct even occurred.@  For example, appellant testified that he did
not assault a student on April 21, 2004, but instead the boy did not know who
hit him, so he just picked the person who was closest, which happened to be
appellant.

Hilgers opined that appellant
should be transferred to TDCJ.  He stated
that appellant Ahas made
little progress with regard to treatment and does not appear to have responded
positively to TYC=s most
structured intervention program.@  Hilgers concluded that A[appellant=s] risk to
both students and staff within TYC appears high and his prognosis for a  successful treatment outcome appears low.@








Cucolo testified that it was
TYC=s recommendation that J.M. be transferred to TDCJ.  In his recommendation letter, Cucolo stated
that J.M. is seen as a high risk to reoffend and concluded that A[t]here appears to be little likelihood that [appellant] will
meaningfully respond to future rehabilitative efforts within [TYC].@

Additionally, the State filed
numerous exhibits that were introduced into evidence at the hearing regarding
J.M.=s behavior while at TYC.  The
exhibits detail every report filed on J.M. and every incident that J.M. was
involved in while at TYC.  The records
further support the trial court=s decision to transfer him to TDCJ. 
We hold that there is ample evidence to support the trial court=s order to transfer J.M. to TDCJ; therefore, the trial court did not
abuse its discretion in ordering him transferred.  We overrule his second point.

                                          V.  Conclusion

Having overruled appellant=s points, we affirm the trial court=s order transferring him to TDCJ. 


 

PER CURIAM

 

PANEL F:    LIVINGSTON, WALKER, and MCCOY, JJ.

 

DELIVERED:
November 17, 2005    











[1]See Tex. R. App. P. 47.4.





[2]A
transfer hearing is a hearing held by the trial court to determine whether a
person committed to TYC should be transferred to TDCJ.  Tex.
Fam. Code Ann. '
54.11(a).  





[3]J.M.=s
mother, father, and grandmother attended as well.





[4]Appellant
argues that the trial court was required under section 51.09 of the family code
to inquire about whether J.M. joined in his attorney=s
waiver of proper notice; however, when asked if he needed more time, J.M.
responded that he did not.  See Tex. Fam. Code Ann. '
51.09 (Vernon 2002).





[5]Because
we have determined that appellant received adequate notice of the hearing, we
need not address his Fifth Amendment due process complaint.  See Tex.
R. App. P. 47.1.