IN THE MATTER OF J.M.

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-180-CV

IN THE MATTER OF 

J.M. 

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant J.M. appeals the trial court’s order transferring him from the custody of the Texas Youth Commission (TYC) to the Institutional Division of the Texas Department of Criminal Justice (TDCJ) for the completion of his fourteen-year determinate sentence.  In two points, appellant complains that the trial court erred by proceeding with the transfer hearing because he did not receive reasonable notice and that the trial court abused its discretion by transferring him to TDCJ, rather than recommitting him to TYC.  We affirm.

II.  Background Facts

The trial court committed appellant to TYC for a fourteen-year determinate sentence after adjudicating him delinquent of committing four counts of aggravated robbery.  After appellant served eleven months at TYC, TYC requested that appellant be transferred to TDCJ.  The trial court held a hearing pursuant to section 54.11 of the Texas Family Code concerning the transfer of appellant to TDCJ or his return to TYC.  
See 
Tex. Fam. Code Ann.
 § 54.11 (Vernon Supp. 2005).  

At the February 15, 2005 transfer hearing, Leonard Cucolo, a TYC court liaison and custodian of records, testified that appellant had engaged in 107 documented incidents of misconduct while at TYC and was placed in the security unit twelve times.  The security unit is a program that separates students who exhibit assaultive or disruptive behavior from the rest of the population.  After being committed to TYC, appellant was sent to the Marlin Unit for evaluation for sixty days.  While at Marlin, appellant engaged in fourteen incidents of misconduct and was placed in the security unit once.  TYC later assigned appellant to the Giddings State School and he was transferred there on June 3, 2004.  Two weeks after appellant arrived at Giddings, he broke a peer’s jaw.  The peer required hospitalization and surgery for his injuries.  Cucolo testified that appellant’s behavior at Giddings was “extremely poor,” and it continued to be so even after appellant was warned that he could be transferred to TDCJ.  In fact, on January 30, 2005, fifteen days before the transfer hearing, appellant was involved in an incident that put staff and peers in danger, but Cucolo did not give details of this incident at the hearing.  After hearing evidence from both the State and appellant, the trial court ordered appellant to be transferred to TDCJ to serve the remainder of his sentence.

III.  Notice of Transfer Hearing

In his first point, appellant complains that the trial court erred by continuing with the transfer hearing because he did not receive reasonable notice of the hearing.
(footnote: 2) 

Section 54.11(b) of the family code requires the trial court to notify “the person to be transferred or released under supervision” of the time and place of the hearing.  
Tex. Fam. Code Ann.
 § 54.11(b)(1);
 In re J.L.S.
, 47 S.W.3d 128, 130 (Tex. App.— Waco 2001, no pet.).  Appellant concedes that he was present at the transfer hearing and received notice of it.  His sole argument is that he did not receive 
adequate
 notice of the transfer hearing. 

The record contains a January 13, 2005 letter from Sherry L. Brown, the court coordinator for the trial court, to TYC, appellant, appellant’s family, the State’s attorneys, and the victims of appellant’s delinquent conduct, stating that a transfer hearing was going to be held on February 15, 2005 and that a bench warrant would be issued for appellant two weeks before the hearing date.  On January 25, 2005, the trial court issued a bench warrant for appellant, setting the transfer hearing for February 15, 2005 and ordering appellant to be transferred to the Lynn W. Ross Detention Center on February 1, 2005 to await the hearing.

At the beginning of the transfer hearing, the trial court stated:

The Court will make note that we received [the transfer request] on January sixth of 2005, and this case has been set within appropriate time frames under the law.  

The law requires that we notify a number of people of this hearing.  It requires that we notify the person to be transferred or released, and we have notified and in fact [J.M.] appears here today with his attorney.

Appellant and his attorney attended the transfer hearing,
(footnote: 3) but neither requested a continuance due to lack of notice or insufficient time to prepare.  In fact, appellant’s attorney stated at the hearing that he “[did not] really know of any defensive issues that we were not able to develop.”  He did, however, tell the trial court that appellant had complained to him that he felt he had not received notice of the hearing soon enough.
(footnote: 4)  At the end of the hearing, appellant’s counsel asked him if he wanted to tell the judge anything else, and appellant told her only that he was surprised about the transfer request because he made such an improvement while at TYC. 

The order transferring appellant to TDCJ recited that “due notice had been issued on all parties as required by [s]ection 54.11(b) and (d) of the Texas Family Code.”  
See In re B.D.
, 16 S.W.3d 77, 80 (Tex. App.སྭHouston [1st
 Dist.] 2000, pet. denied).  
We may presume the regularity of recitations like this in judgments.  
Id.
; 
see also Breazeale v. State
, 683 S.W.2d 446, 450-51 (Tex. Crim. App. 1985) (op. on reh’g).  Additionally, we are entitled to rely on a presumption of proper notice.  
See Osborn v. Osborn
, 961 S.W.2d 408, 411 (Tex. App.སྭHouston [1st Dist.] 1997, writ denied) (stating that the law presumes that a trial court has given proper notice prior to a hearing).  

Other courts of appeals have held that adequate notice of the transfer hearing has been given in similar circumstances.  In
 B.D.
, the Houston First District Court of Appeals held that the appellant received adequate notice when he and his counsel attended the transfer hearing and did not request a continuance, a docket notation indicated that a bench warrant had been signed for appellant, and the order transferring appellant to TDCJ indicated that “due notice had been issued to all parties.”  
16 S.W.3d at 80-81
.  

Likewise, the Austin Court of Appeals in 
In re T.E.
, held that a juvenile in a disposition modification hearing is not entitled to service of process but only reasonable notice.  
No. 03-04-00590-CV, 2005 WL 1583463, at *2 (Tex. App.སྭAustin July 7, 2005, no pet.) (mem. op.).  The court stated that when a child’s attorney appears, does not file a motion for continuance, and the child and parents are present and fully advised by the trial court as to the issues before the trial court, reasonable notice is presumed.  
Id.  

Here, appellant, his attorney, and his family were present at the transfer hearing and they did not request a continuance.  In fact, appellant’s counsel stated that he did not know of any defenses that he was not able to develop because of any time restrictions.  The record includes a letter from the court coordinator to all parties giving them notice of the hearing.  Further, the trial court’s oral findings at the beginning of the hearing recite that proper notice was given to all interested parties, including appellant.  Additionally, a docket notation indicates that notice of the hearing was sent to appellant, and the order transferring him indicates that “due notice had been issued to all parties.” Because the record shows that appellant received adequate notice of the transfer hearing, and we are entitled to rely on the recitations in the judgment, we overrule his first point.
(footnote: 5) 

IV.  Sufficiency of the Evidence

In his second point, appellant argues that the trial court abused its discretion by transferring appellant from TYC to TDCJ.  Specifically, appellant argues that a review of the factors that the trial court can consider in determining whether a transfer to TDCJ is appropriate shows that the trial court’s decision to transfer him was arbitrary.  The State argues that there is ample evidence to support the trial court’s determination to transfer appellant to TDCJ.

A.  Standard of Review

When reviewing the trial court’s decision to transfer a juvenile from TYC to TDCJ, the appellate court employs an abuse of discretion standard.
  In re R.G.
, 994 S.W.2d 309, 312 (Tex. App.སྭHouston [1st Dist.] 1999, pet. denied);
 K.L.M. v. State
, 881 S.W.2d 80, 84 (Tex. App.སྭDallas 1994, no writ).  If some evidence exists to support the trial court’s decision, there is no abuse of discretion.  
R.G.
, 994 S.W.2d at 312; 
K.L.M.
, 881 S.W.2d at 84.  We are to review the entire record to determine whether the trial court acted without reference to any guiding rules and principles.  
K.L.M., 
881 S.W.2d at 84.
  
We may not reverse a trial court’s decision merely because we disagree with that decision, so long as the trial court acted within its discretionary authority.  
R.G., 
994 S.W.2d at 312.  

B.  Analysis

 When a juvenile is given a determinate sentence, upon TYC’s request to transfer the juvenile to TDCJ, the trial court is required to hold a hearing pursuant to family code section 54.11.  
Tex. Fam. Code Ann. ྷ 
54.11;
 Tex. Hum. Res. Code Ann
. ྷ 61.079(a) (Vernon Supp. 2005); 
In re J.D.P.
, 149 S.W.3d 790, 792 (Tex. App.སྭFort Worth 2004, no pet.).  At the transfer hearing, a trial “court may consider written reports from probation officers, professional court employees, professional consultants, or employees of [TYC], in addition to the testimony of witnesses.” 
Tex. Fam. Code Ann
. ྷ 54.11(d).  At the conclusion of such a hearing, the trial court may either order the return of the juvenile to TYC or the transfer of the juvenile to the custody of TDCJ for the completion of the juvenile’s sentence.  
Id
. ྷ 54.11(i). 

 In evaluating the evidence and deciding whether to transfer a juvenile to TDCJ, a trial court may consider the following: (1) the experiences and character of the person before and after commitment to TYC; (2) the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed; (3) the abilities of the person to contribute to society; (4) the protection of the victim of the offense or any member of the victim’s family; (5) the recommendations of TYC and the prosecuting attorney; (6) the best interests of the person; and (7) any other relevant factor.  
Id. 
ྷ 54.11(k); 
J.D.P.
, 149 S.W.3d at 792. 

The trial court is not required to consider all of the factors, and the trial court is expressly allowed to consider unlisted but relevant factors. 
 In re C.L., Jr.
, 874 S.W.2d 880, 886 (Tex. App.སྭAustin 1994, no writ)
.  Evidence of each factor is not required.  
Id.
; 
see also J.D.P.
, 149 S.W.3d at 792.
 
 Similarly, the trial court may assign different weights to the factors it considers.  
C.L., Jr.,
 874 S.W.2d at 886; 
see also J.D.P.,
 149 S.W.3d at 792.
 
 In determining whether the trial court abused its discretion, we look to see whether the trial court acted without reference to guiding rules or principles.
  See J.D.P
., 149 S.W.3d at 791; 
see also Downer v. Aquamarine Operators, Inc
., 701 S.W.2d 238, 241-42 (Tex. 1985), 
cert. denied
, 476 U.S. 1159 (1986); 
In re J.C.D.
, 874 S.W.2d 107, 108 (Tex. App. སྭAustin 1994, no writ). 

Cucolo testified that appellant’s behavior was “extremely poor.”  In the eleven months appellant was at TYC, he was involved in 107 documented incidents of misconduct.  Cucolo testified that these incidents included disruption, assault by threat of imminent bodily injury towards staff and other youths, failing to follow staff instructions, and possession of contraband.  On one occasion, TYC had to restrain appellant with pepper spray after he verbally threatened the staff.

Appellant argues that it was an abuse of discretion to transfer him to TDCJ because most of the documented incidents were minor, giving examples of whistling at girls, smacking his lips, and possessing extra clothes and pens.  Appellant points to the fact that Cucolo stated that he is a “smart kid” and that he was taking G.E.D. courses as evidence of the positive experience he has had at TYC; however, appellant’s positive academic record does not offset his negative behavioral history.  Appellant testified that he has fifty to sixty violations for failing to follow instructions, and admitted that he committed more than half of the 107 documented incidents.  After the April 21, 2004 incident when appellant hit a peer, TYC placed him in the security unit for two days.  When a youth is placed in the security unit, TYC removes him from the rest of the population for a period up to twenty-four hours; however, the time can be extended if the youth fails to cooperate with security staff and fails to show that he is capable of release, which is what occurred in this case.   Additionally, TYC placed appellant in the behavioral management program for ninety days after he threw urine on the staff. 

Cucolo testified that appellant has never taken responsibility for his own actions, including the aggravated robberies for which he was committed.  Psychologist Michael Hilgers, who evaluated appellant, stated that appellant has “accepted little responsibility for his behavior, instead he largely blamed others for provoking him and in some instances denied that the misconduct even occurred.”  For example, appellant testified that he did not assault a student on April 21, 2004
, but instead the boy did not know who hit him, so he just picked the person who was closest, which happened to be appellant.

Hilgers opined that appellant should be transferred to TDCJ.  He stated that appellant “has made little progress with regard to treatment and does not appear to have responded positively to TYC’s most structured intervention program.”  Hilgers concluded that “[appellant’s] risk to both students and staff within TYC appears high and his prognosis for a  successful treatment outcome appears low.”

Cucolo testified that it was TYC’s recommendation that J.M. be transferred to TDCJ.  In his recommendation letter, Cucolo stated that J.M. is seen as a high risk to reoffend and concluded that “[t]here appears to be little likelihood that [appellant] will meaningfully respond to future rehabilitative efforts within [TYC].”

Additionally, the State filed numerous exhibits that were introduced into evidence at the hearing regarding J.M.’s behavior while at TYC.  The exhibits detail every report filed on J.M. and every incident that J.M. was involved in while at TYC.  The records further support the trial court’s decision to transfer him to TDCJ.  We hold that there is ample evidence to support the trial court’s order to transfer J.M. to TDCJ; therefore, the trial court did not abuse its discretion in ordering him transferred.  We overrule his second point.

V.  Conclusion

Having overruled appellant’s points, we affirm the trial court’s order transferring him to TDCJ.  

PER CURIAM

PANEL F: LIVINGSTON, WALKER, and MCCOY, JJ.

DELIVERED: November 17, 2005 

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
A transfer hearing is a hearing held by the trial court to determine whether a person committed to TYC should be transferred to TDCJ.  
Tex. Fam. Code Ann.
 § 54.11(a).  

3:
J.M.’s mother, father, and grandmother attended as well.

4:
Appellant argues that the trial court was required under section 51.09 of the family code to inquire about whether J.M. joined in his attorney’s waiver of proper notice; however, when asked if he needed more time, J.M. responded that he did not.  
See 
Tex. Fam. Code Ann. 
§ 51.09 (Vernon 2002).

5:
Because we have determined that appellant received adequate notice of the hearing, we need not address his Fifth Amendment due process complaint.  
See 
Tex. R. App. P.
 47.1
.