COURT OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                      FORT
WORTH

 

 

                                           NO.
2-07-431-CV

 

 

IN THE MATTER OF J.B.C.                                                                     

 

                                                                                                           

 

                                                  ------------

 

             FROM
THE 323RD DISTRICT COURT OF TARRANT COUNTY

 

                                                  ------------

 

                                  MEMORANDUM
OPINION[1]

 

                                                  ------------

I.
Introduction








Appellant J.B.C. appeals the
trial court=s order
transferring him from the custody of the Texas Youth Commission (TYC) to the
Institutional Division of the Texas Department of Criminal Justice (TDCJ) for
the completion of his forty-year determinate sentence for the offense of
murder.  In his sole issue, J.B.C.
complains that the trial court abused its discretion by transferring him to
TDCJ.  We will affirm.

II.  Factual and Procedural Background

A jury found that J.B.C.
engaged in delinquent conduct by committing murder.  See In re J.B.C., 233 S.W.3d 88, 94
(Tex. App.CFort Worth
2007, pet. denied) (providing details concerning J.B.C.=s fatally shooting his maternal grandmother in the back of the head
with a .32 caliber handgun and affirming trial court=s judgment).  The trial court
sentenced J.B.C. to forty years= confinement with TYC with a possible transfer to TDCJ.  Id. 
After J.B.C. turned eighteen years old and had spent approximately
eighteen months in the custody of TYC, upon TYC=s request, the trial court held a hearing pursuant to section 54.11 of
the family code and section 61.079(a) of the human resources code concerning
the transfer of J.B.C. to TDCJ.  See
Tex. Fam. Code Ann. ' 54.11
(Vernon Supp. 2008); Tex. Hum. Res. Code Ann.
' 61.079(a) (Vernon Supp. 2008).








At the November 20, 2007
transfer hearing, the State presented the testimony of TYC court liaison
Leonard Cucolo as well as TYC=s general file, master file, and security file on J.B.C.  Cucolo testified that there are three
categories by which J.B.C. was evaluated while at TYCCacademics, behavior, and conduct. 
Cucolo said that although J.B.C. had progressed well in the area of
academics, he had progressed poorly both behaviorally and in his conduct.
Cucolo testified that J.B.C. had demonstrated Apretty serious behavior problems in the form of an assault or
aggressive behavior towards staff and students.@ Cucolo said that J.B.C. had been confined to the security unit
multiple times for being a danger to others. 
He also said that J.B.C. had a pattern of being disrespectful and
verbally aggressive toward staff and students and failed to follow instructions
from TYC staff.  In all, Cucolo testified
that J.B.C. had roughly seventy documented incidents of misconduct or referrals
to TYC=s security unit. Eighteen of these referrals resulted in his removal
from TYC=s dorm.

Cucolo also detailed a few of
the incidents that led to J.B.C.=s removal to TYC=s security
unit.  One such incident involved J.B.C. Ahitting his peer with a closed fist continuously@ while yelling out, AWhite Power.@  Cucolo stated that J.B.C.=s reference to AWhite Power@ was Agang-related.@  Cucolo also said that J.B.C.
had received a variety of services at TYC, including pharmacological
intervention, psychiatric counseling, medication for anxiety, individual
counseling, group counseling, and staff counseling.  Cucolo said that despite these services,
J.B.C. was generally disruptive and tended to blame others for his behavioral
problems.  In sum, Cucolo said that
J.B.C. demonstrated an inability to progress in his re-socialization program.








Jeannette Saha, a case
manager for TYC who knew and had worked with J.B.C., also testified.  She too stated that J.B.C. had progressed
well academically.  Saha also stated that
she believed J.B.C. had progressed both behaviorally and in his conduct.  Saha said that she believed J.B.C. benefitted
from being at TYC and that she believed specialized treatment would be of
significant benefit to him.

Following closing arguments,
the court took the case under advisement to review the documentary
evidence.  After reviewing the written
evidence, the trial court advised J.B.C. of his appellate rights and ordered
that J.B.C. be transferred to TDCJ to complete his forty-year sentence.  This appeal followed. 

III.  Discussion

1.      Minimum Time Requirement

In part of his sole issue,
J.B.C. complains that the trial court abused its discretion by ordering him
transferred to TDCJ when he had only served roughly half of his three-year
minimum time requirement at TYC.  We
disagree. 








The three-year minimum time
requirement discussed at the transfer hearing concerns a limitation on TYC=s power to release J.B.C. on parole, rather than a statutory minimum
time requirement that J.B.C. was to stay at TYC.  See Tex. Hum. Res. Code Ann. ' 61.081 (Vernon Supp. 2008) (providing TYC Amay not release the child under supervision without approval of the
juvenile court . . . unless . . . the child has served at
least . . . 3 years, if the child was sentenced to commitment for
conduct constituting . . . a felony of the first degree.@).  In this case, the minimum
time before recommending a transfer from TYC to TDCJ was six months.  See 37 Tex. Admin. Code ' 85.65(e)(2)(B) (2006) (providing that TYC may request a juvenile
court hearing for transfer to TDCJ for sentenced offenders who have been
convicted of a felony offense and have spent at least six months in a high
restriction facility).

Here, it is uncontested that
J.B.C. spent more than six months in a high-restriction facility prior to TYC=s request that he be transferred to TDCJ.  We overrule this part of J.B.C.=s sole issue. 

2.      J.B.C.=s Transfer

In the remainder of his sole
issue, J.B.C. complains that the trial judge=s decision to transfer him to TDCJ was unreasonable and
arbitrary.  J.B.C. argues that the trial
court abused its discretion by not allowing him to return to TYC and be moved
to a specialized dorm where he could potentially progress in the areas of
behavior and conduct.  We are not
persuaded by this argument. 








In reviewing the trial court=s decision to transfer J.B.C from the custody of TYC to TDCJ, we
employ an abuse of discretion standard.   See In re J.D.P., 149 S.W.3d 790, 792
(Tex. App.CFort Worth
2004, no pet.); In re J.M.O., 980 S.W.2d 811, 812B13 (Tex. App.CSan Antonio
1998, pet. denied); K.L.M. v. State, 881 S.W.2d 80, 84 (Tex. App.CDallas 1994, no writ).  We are
to review the entire record to determine whether the trial court acted without
reference to any guiding rules and principles. 
J.D.P., 149 S.W.3d at 792. 
We may not reverse a trial court=s decision merely because we disagree with that decision, so long as
the trial court acted within its discretionary authority.  In re R.G., 994 S.W.2d 309, 312 (Tex.
App.CHouston [1st Dist.] 1999, pet. denied).

When a juvenile is given a
determinate sentence, upon TYC=s request to transfer the juvenile to TDCJ, the trial court is
required to hold a hearing pursuant to family code section 54.11.  Tex. Fam. Code Ann. ' 54.11; see also Tex. Hum. Res. Code Ann. ' 61.079(a).  At the
transfer hearing, a trial court Amay consider written reports from probation officers, professional
court employees, professional consultants, or employees of the Texas Youth
Commission, in addition to the testimony of witnesses.@  Tex. Fam. Code Ann. ' 54.11(d).  At the
conclusion of such a hearing, the trial court may either order the return of
the juvenile to TYC or the transfer of the juvenile to the custody of TDCJ for
the completion of the individual=s sentence.  Id.  ' 54.11(i).








In evaluating the evidence
and deciding whether to transfer a juvenile to TDCJ, a trial court may consider
the following: (1) the experiences and character of the person before and after
commitment to TYC; (2) the nature of the penal offense that the person was
found to have committed and the manner in which the offense was committed; (3)
the abilities of the person to contribute to society; (4) the protection of the
victim of the offense or any member of the victim=s family; (5) the recommendations of TYC and the prosecuting attorney;
(6) the best interests of the person; and (7) any other relevant factor.  Id. ' 54.11(k).  Within its
discretion, the trial court may assign different weights to the factors it
considers, and the court need not consider every factor.  R.G., 994 S.W.2d at 312.








Texas courts of appeals have
determined that a trial court does not abuse its discretion by transferring a
juvenile to TDCJ even when TYC has recommended that the juvenile be returned to
TYC.  See K.L.M., 881
S.W.2d at 84B85
(upholding transfer to TDCJ where juvenile=s probation officer, treatment supervisor, and TYC=s parole supervisor all recommended that juvenile be recommitted to
TYC=s custody); In re J.C.D., 874 S.W.2d 107, 108B09 (Tex. App.CAustin 1994,
no writ) (upholding transfer to TDCJ where TYC recommended return to TYC).  Texas courts have also held that a trial
court does not abuse its discretion in transferring a juvenile to TDCJ even
when evidence suggests that the possibility of more specialized treatment would
be obtained by a juvenile=s return to
TYC.  See In re J.R.W. v. State,
879 S.W.2d 254, 258 (Tex. App.CDallas 1994, no writ) (upholding trial court=s transfer of juvenile to TDCJ even though a state psychologist
recommended that he be sent back to TYC for participation in a specialized
program); In re C.D.R., 827 S.W.2d 589, 592B93 (Tex. App.CHouston [1st
Dist.] 1992, no writ) (rejecting juvenile=s claim that he should have been returned to a TYC specialized sex
offender program).  Furthermore, a trial
court does not abuse its discretion if it considers that a juvenile who has
committed a violent offense, if sent back to TYC, would be released from TYC
and placed on parole once the juvenile turns twenty-one.  See Tex. Hum. Res. Code Ann. ' 61.084(g) (Vernon Supp. 2008); see also K.L.M., 881
S.W.2d at 85B86 (stating
trial court could consider consequence of sending juvenile back to TYC); see
also J.R.W., 879 S.W.2d at 258 (stating trial court has no duty to
rehabilitate a juvenile, but only makes a determination whether to transfer the
juvenile to TDCJ or send the juvenile back to TYC).








At the transfer hearing, the
trial court was aware that J.B.C. had previously been found guilty of shooting
his maternal grandmother in the back of the head with a .32 caliber
handgun.  This incident resulted in his
placement at TYC.  The trial court was
also informed that if J.B.C. was returned to TYC, when he turned twenty-one, he
would be released from TYC and placed on parole for the remainder of his
sentence.  The trial court heard evidence
that while at TYC, J.B.C. had assaulted his peers, threatened staff members,
and continually failed to take responsibility for his actions.  The evidence before the trial court was that
of the roughly seventy personal-conduct incidents reported in his eighteen
months at TYC, J.B.C. had been involved in five assaults and seven documented
incidents of danger to others and had demonstrated participation in
gang-related activity.  Some of these
events even occurred after J.B.C. learned he was being reviewed for possible
transfer to TDCJ.

After a complete review of
the record, and mindful that one of J.B.C.=s case managers testified that specialized treatment would be of
significant benefit to J.B.C., we cannot say that the trial court acted without
reference to any guiding rules and principles in declining to send J.B.C. back
to TYC and in transferring him from TYC to TDCJ.  Accordingly, we overrule the remainder of
J.B.C.=s sole issue.

IV.  Conclusion

Having overruled J.B.C.=s sole issue, we affirm the trial court=s judgment.

 

PER CURIAM

PANEL: 
HOLMAN, GARDNER, and MCCOY, JJ.

DELIVERED: 
October 9, 2008











[1]See Tex. R. App. P. 47.4.