In the Matter of J.D.P.

No. 2–03–374–CV.

Court of Appeals of Texas,
Fort Worth.

July 15, 2004.

Stephen R. Bjordammen, Wichita Falls, for Appellant.

Barry Macha, District Attorney, Douglas L. Baker and Starla S. Jones, Asst. District Attorneys for Wichita County, Wichita Falls, for Appellee.

Panel F: CAYCE, C.J.; GARDNER and McCOY, JJ.

## OPINION

ANNE GARDNER, Justice.

Appellant J.D.P. appeals the order of the trial court transferring him from the custody of the Texas Youth Commission (TYC) to the Institutional Division of the Texas Department of Criminal Justice (TDCJ) for the completion of his twenty-year determinate sentence. In his sole issue, Appellant complains that the trial court abused its discretion in transferring him to TDCJ, rather than recommitting him to TYC. We will affirm.

### I. Factual and Procedural Background

A jury determined that Appellant engaged in delinquent conduct by committing the second-degree felony offense of reckless injury to a child, made a deadly weapon finding, and assessed Appellant's punishment at a determinative sentence of twenty years in TYC with a possible transfer to TDCJ. *See In re J.D.P.*, 85 S.W.3d 420, 423–24, 429 (Tex.App.-Fort Worth 2002, no pet.) (providing details concerning Appellant's fatally shooting a ten-year-old boy with a nine millimeter handgun and affirming trial court's judgment). After Appellant turned eighteen years old and had spent approximately twenty-seven months in the custody of TYC, upon TYC's request, the trial court held a hearing pursuant to section 54.11 of the family code and section 61.079(a) of the human resources code concerning the transfer of Appellant to TDCJ. *See* TEX. FAM.CODE ANN. § 54.11 (Vernon Supp.2004); TEX. HUM. RES.CODE ANN. § 61.079(a) (Vernon 2001).

At the October 15, 2003 transfer hearing, the State presented the testimony of TYC court liaison Leonard Cucolo and the following exhibits: TYC's general file on Appellant, two volumes of Appellant's security file, Cucolo's summary of TYC's file, and a handwritten letter by Appellant. The trial court, which had presided over the adjudication and disposition of Appellant, also took judicial notice of some of the evidence admitted during the prior juvenile proceedings. Specifically, Appellant's attorney reminded the court of Dr. Harvey Martin, a psychiatrist, who had testified in Appellant's disposition proceedings that Appellant "was in need of specialized psychiatric care for a period of one year or

longer." The trial court indicated that it would review Dr. Martin's testimony. While Appellant did not testify, his mother did on his behalf. Appellant also introduced one of his monthly "Individual Case Plan: Release/Review Summar[ies]."

Following closing arguments, the court advised Appellant of his appellate rights and took the case under advisement to review the documentary evidence. On November 18, 2003, after reviewing the written evidence, the trial court made findings of fact and conclusions of law and ordered that Appellant be transferred to TDCJ for the completion of his twenty-year sentence.

## II.  Standard of Review

◼ In reviewing the trial court's decision to transfer Appellant from the custody of TYC to TDCJ, we employ an abuse of discretion standard. *In re J.M.O.*, 980 S.W.2d 811, 812–13 (Tex.App.-San Antonio 1998, pet. denied); *K.L.M. v. State*, 881 S.W.2d 80, 84 (Tex.App.-Dallas 1994, no writ). We are to review the entire record to determine whether the trial court acted without reference to any guiding rules and principles. *K.L.M.*, 881 S.W.2d at 84. We may not reverse a trial court's decision merely because we disagree with that decision, so long as the trial court acted within its discretionary authority. *In re R.G.*, 994 S.W.2d 309, 312 (Tex.App.-Houston [1st Dist.] 1999, pet. denied).

## III.  Analysis

When a juvenile is given a determinate sentence, upon TYC's request to transfer the juvenile to TDCJ, the trial court is required to hold a hearing pursuant to family code section 54.11. TEX. FAM.CODE ANN. § 54.11; TEX. HUM. RES.CODE ANN. § 61.079(a). At the transfer hearing, a trial "court may consider written reports from probation officers, professional court employees, professional consultants, or employees of the Texas Youth Commission, in addition to the testimony of witnesses." TEX. FAM.CODE ANN. § 54.11(d). At the conclusion of such a hearing, the trial court may either order the return of the juvenile to TYC or the transfer of the juvenile to the custody of TDCJ for the completion of the individual's sentence. *Id.* § 54.11(I).

◼ In evaluating the evidence and deciding whether to transfer a juvenile to TDCJ, a trial court may consider the following: (1) the experiences and character of the person before and after commitment to TYC; (2) the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed; (3) the abilities of the person to contribute to society; (4) the protection of the victim of the offense or any member of the victim's family; (5) the recommendations of TYC and the prosecuting attorney; (6) the best interests of the person; and (7) any other relevant factor. *Id.* § 54.11(k). Within its discretion, the trial court may assign different weights to the factors it considers, and the court need not consider every factor. *R.G.*, 994 S.W.2d at 312.

◼ Appellant has a history of using marijuana, and he became involved with gangs before he was committed to TYC. Appellant's prior delinquent history includes two offenses of disorderly conduct in 1999 and 2000 (both were refused and dismissed), one offense of criminal trespass on June 18, 2000 (adjudicated to probation), and a September 1, 2000 offense of burglary of a habitation (adjudicated to probation). On September 2, 2000, Appellant shot and killed a ten-year-old child with a nine millimeter handgun that he had reportedly stolen in the September 1, 2000 burglary. Appellant was adjudicated delinquent for the September 2, 2000

shooting and death of the child, given a twenty-year determinate sentence, and committed to TYC.

Following his trial, Appellant was admitted to the Orientation and Assessment Unit in Marlin on May 24, 2001, and he was subsequently assigned to the Giddings State School (GSS) on July 17, 2001, where he remained until the transfer hearing. Appellant was transferred to GSS because it houses juveniles who participate in the Capital and Serious Violent Offender Treatment Program (CSVOTP). TYC's files indicate that Appellant was considered for one of the limited number of spots in CSVOTP, but he failed to participate in the program because of behavioral problems. Cucolo's summary states, "In addition to [Appellant's] pattern of chronic disruption and behavior problems, he has demonstrated a pattern of poor motivation and inconsistent progress in correctional therapy."

Cucolo testified that Appellant's overall progress in the TYC program was rated as fair in November 2001 and again in June 2002 by the Special Services Committee. However, in November 2002, Appellant was recommended for transfer to TDCJ. Instead, TYC decided to delay the transfer request and gave Appellant six additional months to participate in TYC's Resocialization program. Despite being given this second chance, Appellant's behavior and progress deteriorated to the point that he was again recommended for transfer to TDCJ.

While at GSS, Appellant was determined to have a full scale IQ of 81, which placed him in the below average range of intellectual functioning. To his credit, Appellant made progress in academics and earned his GED on November 13, 2001.

During his time at GSS, Appellant's overall behavior was "extremely poor," according to Cucolo's summary of TYC's general and security file. As the State points out, as of September 18, 2003, Appellant had committed 203 documented incidents of misconduct at GSS. While Cucolo acknowledged on cross-examination that many of the 169 incidents of disruption were minor in nature—for example, cussing and not following TYC's directions—and eight were self-referrals, he detailed in his report multiple "serious rule violations" spanning between July 10, 2001 to August 23, 2003. The serious rule violations consisted of seven of "danger to others," six of assaults on other students, one assault on TYC staff, six of possession of contraband, two of injury to self, four of gang-related behavior, two of fleeing apprehension, and one of throwing his urine at TYC staff. It is therefore evident that Appellant's gang activity and violent behavior, which began before he was sent to TYC, continued, in spite of the fact that he was in a highly-structured environment at GSS.

The State also introduced into evidence a letter Appellant wrote to his girlfriend on August 7, 2003. Cucolo described the letter as gang-related, assaultive, and threatening and testified that Appellant was sent to the security unit as a result of writing it. The State directed the court to a portion of the letter, in which Appellant admits to being "too jealous to sit back and watch his [girlfriend] fuck around wit[h] another nigga-n-shit," and then states, "Fuck that! That cat would catch a 9mm hollow tip str8 between the eyes." The State then reminded the court that the reason Appellant was sent to TYC was because he had killed a juvenile with a nine millimeter handgun.

The record shows that it was the unanimous recommendation of everyone who worked with Appellant at TYC that he be transferred to TDCJ. During the transfer hearing, Cucolo and the prosecuting attorney also recommended transferring Appel-

lant to TDCJ. Appellant's mother testified that she thought Appellant should be given the opportunity to mature and receive further treatment at TYC, although she acknowledged on cross-examination that she could not give any assurances that he would mature or successfully complete TYC's programs. As the State points out, courts of appeals have determined that a trial court does not abuse its discretion in transferring a juvenile to TDCJ even when TYC has recommended that the juvenile be returned to TYC. *See K.L.M.*, 881 S.W.2d at 84–85 (upholding transfer to TDCJ where juvenile's probation officer, treatment supervisor at GSS, and TYC's parole supervisor all recommended that juvenile be recommitted to TYC's custody); *In re J.C.D.*, 874 S.W.2d 107, 108–09 (Tex.App.-Austin 1994, no writ) (upholding transfer to TDCJ where TYC recommended return to TYC). Here, the only evidence recommending that Appellant be returned to TYC came from his mother.

Appellant points to evidence of his mental health problems and argues that he should have been sent back to TYC where he could receive further treatment for his behavioral and mental health impairments. Indeed, TYC's files reflect that Appellant has been diagnosed for several years as suffering from mental health disorders such as ADHD that required him to take psychotropic medications throughout his confinement at TYC. Cucolo also testified that at various times prior to and during his commitment to TYC, TYC's mental health professionals evaluated Appellant and diagnosed him as having a number of serious mental health issues.

Symptomatic of his mental conditions, Appellant has poor decision-making ability, difficulty controlling impulses, difficulty concentrating and applying himself, and difficulty associating personal conduct and potential consequences. One psychologist, Michael Hilgers, who evaluated Appellant, assessed him as having "emerging antisocial traits" based on the "chronic nature of his oppositional behaviors towards authority figures, continued verbal aggression in response to confrontation, assaults while in a highly structured environment, and association with known institutional gang members." Hilgers opined that because Appellant exhibited these traits in "an environment with strong external controls, it is likely that [Appellant] maintains antisocial traits that will not shift in response to treatment interventions."

Cucolo testified that while TYC has specialized programs in Corsicana and Crockett to assist and treat emotionally disturbed offenders like Appellant, Appellant was never placed in those specialized treatment programs. During the hearing, Appellant's counsel referred to Dr. Martin's testimony that Appellant "was in need of specialized psychiatric care for a period of one year or longer." Appellant maintains that the trial court abused its discretion in transferring him to TDCJ because he never had and should have been given the opportunity to participate in the specialized treatment programs available in either Corsicana or Crockett.

But the evidence shows that the reason Appellant went to GSS was so that he could participate in and benefit from another specialized treatment program, CSVOTP. When Appellant was first assessed at the Marlin facility, his previous treatment with the drug Zoloft was gradually discontinued. TYC staff continued his treatment with Ritalin throughout his time at GSS. Moreover, while at GSS, Appellant was involved in group counseling sessions five days each week, and he was involved in multiple individual counseling sessions with his primary service worker and other professionals, such as psychologist Thomas Talbott.

According to TYC records, Talbott met with Appellant for individual counseling sessions between February and June 2003. Talbott noted that Appellant continued to demonstrate inappropriate behaviors at times, frequently blamed others for his difficulties, and attempted to deceive others. Further, Talbott observed that Appellant continued to make limited progress in treatment as well as in improving his behavior. As noted above, Appellant's behavior, attitude, and lack of motivation prevented him from participating in CSVOTP.

Through individual counseling sessions with his caseworker, Appellant was "repeatedly" reminded of his determinate sentence and encouraged, on multiple occasions, to increase his motivation for success. Despite TYC's efforts, records indicate that Appellant responded to the attempted intervention with a hostile attitude and "maintained the same pattern of poor motivation, inconsistent progress, and chronic disruption."

Further, Cucolo's summary states that all determinate sentence youth committed to TYC, including Appellant, are informed of the family code provisions that allow TYC to request a juvenile's transfer to TDCJ if that juvenile does not comply with treatment expectations or continues to act out. Here, Appellant stated that he understood the possibility of a transfer to TDCJ existed, but to TYC, "[h]e appear[ed] to be unconcerned about this consequence in light of his continued disruptive and assaultive behaviors."

Cucolo stated that, based on his review of Appellant's records from the psychologists, social workers, and others who had worked with and treated Appellant at GSS, Appellant's mental illness was not what prevented him from completing the programs offered at GSS. From this evidence, the court could have determined that—

despite the group and individual treatment Appellant received while at GSS and the second chances given to him, because of the opportunity and inability or unwillingness of Appellant to participate in CSVOTP, and his continued lack of improvement—further specialized treatment would not have been beneficial to Appellant, even though Dr. Martin had initially recommended such. *See J.R.W. v. State*, 879 S.W.2d 254, 258 (Tex.App.-Dallas 1994, no writ) (upholding trial court's transfer of juvenile to TDCJ even though a state psychologist recommended that he be sent back to TYC for participation in the SECOR program); *C.D.R. v. State*, 827 S.W.2d 589, 592–93 (Tex.App.-Houston [1st Dist.] 1992, no writ) (rejecting juvenile's claim that he should have been returned to a TYC specialized sex offender program).

In this case, Appellant caused the death of ten-year-old child and was given the maximum determinate sentence for a second-degree felony. *See* TEX. FAM.CODE ANN. §§ 53.045(a)(8) (concerning injury to a child) (Vernon 2002), 54.04(d)(3)(B) (providing twenty-year maximum determinate sentence for second-degree felonies) (Vernon Supp.2004); TEX. PENAL CODE ANN. § 22.04(e) (Vernon 2003) (providing that reckless injury to a child is second-degree felony). Among the penological goals of the juvenile justice system, rehabilitation is listed in the family code, along with punishment, accountability, and the protection of the welfare of the community. *See* TEX. FAM.CODE ANN. § 51.01 (Vernon 2002). As the Dallas Court of Appeals observed in *K.L.M.*, "the determinate sentencing law is designed to subject violent juveniles who commit serious crimes to longer sentences than they would have served under the conventional juvenile system." 881 S.W.2d at 85 (citing Robert O. Dawson, *The Third Justice System: The New Juvenile-Criminal System of Determinate*

*Sentencing for the Youthful Violent Offender in Texas,* 19 St. Mary's L.J. 943, 945–47 (1987–88)); *see also* Justice Ed Kinkeade, *Appellate Juvenile Justice in Texas—It's a Crime! Or Should Be,* 51 Baylor L.Rev. 17, 37–38, 40–42 (1999) (discussing Texas Legislature's expansion of determinative sentencing as a component of holding juveniles more accountable for their offenses).

At the end of the hearing concerning Appellant's transfer to TDCJ, the trial court discussed what would happen if it sent Appellant back to TYC instead of to TDCJ. The State represented to the court that if it sent Appellant back to TYC, when he turned twenty-one, he would be released from TYC and placed on parole for the remainder of his sentence. *See* Tex. Hum. Res.Code Ann. § 61.084(g) (Vernon Supp.2004). The trial court, recognizing the seriousness of Appellant's violent offense, could have taken into consideration the possibility that Appellant might only serve three more years before his release from TYC and that the goals of punishment, accountability, and the protection of the community would be better served by transferring Appellant from TYC to TDCJ. *See* Tex. Fam.Code Ann. § 51.01; *K.L.M.,* 881 S.W.2d at 85–86 (stating trial court could consider consequence of sending juvenile back to TYC); *see also J.R.W.,* 879 S.W.2d at 258 (stating trial court has no duty to rehabilitate a juvenile, but only makes a determination whether to transfer the juvenile to TDCJ or send him or her back to TYC).

### IV. Conclusion

After a complete review of the record, we cannot say that the trial court abused its discretion in declining to send Appellant back to TYC and in transferring him from TYC to TDCJ. Accordingly, we over-

rule Appellant's sole issue and affirm the trial court's order.