# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00687-CV

### In the Matter of L.C.H.

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT**
**NO. J-18,637, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

In two issues, L.C.H. argues that the district court abused its discretion by considering improper victim-impact testimony and subsequently granting the Texas Youth Commission's ("TYC") request for his early transfer to the Texas Department of Criminal Justice ("TDCJ") Institutional Division. We affirm the decision of the district court.

## BACKGROUND

On November 17, 1998, the State filed an original petition alleging that L.C.H. had engaged in delinquent conduct by committing two counts of robbery. On December 8, a second petition was filed which alleged that on December 1, L.C.H. had committed two counts of sexual assault and two counts of aggravated sexual assault in broad-daylight in a school parking lot. The State's first petition was then amended to incorporate allegations that L.C.H. committed the

additional crimes of unauthorized use of a motor vehicle, indecent exposure, and a third instance of robbery.

L.C.H. pled true to the allegation of aggravated sexual assault. He was adjudicated delinquent and given a determinate sentence of twenty-five years' confinement. He also pled true to two of the three allegations of robbery and the allegation of unauthorized use of a motor vehicle. For this delinquent behavior, he received an additional indeterminate sentence of incarceration not to exceed his twenty-first birthday. The remaining charges against him were waived by the State.

L.C.H. was committed to the TYC and initially attended West Texas State School, a TYC facility. While at West Texas, he received counseling regarding his offense but did not receive specialized sex offender treatment. After self-reporting a fantasy and related plan to rape a female employee at West Texas, he was transferred to Giddings State School. At Giddings, L.C.H. was enrolled in the Sex Offender Treatment Program ("SOTP") but twice failed to pass the program.[1] At both locations, however, he received vocational training and attended group and individual therapy sessions. He also took and passed the GED evaluation.

When L.C.H. was nineteen, the TYC sent a letter recommending L.C.H. for early transfer to the TDCJ Institutional Division, advising that "his conduct within the [TYC] has indicated that the welfare of the community requires his transfer." At the transfer hearing, a

---

[1] The first time L.C.H. was in the SOTP, he failed because of behavior problems including causing disturbances in the group and his lack of amenability to treatment at the time. The second time, he did not pass due to his return to previous behavior patterns. Specifically, L.C.H. approached a cafeteria employee and made sexually explicit remarks to her while attempting to isolate her, causing the employee to feel threatened. L.C.H. denied that the incident happened, and refused to perform supplemental assignments. Furthermore, L.C.H. failed to create a realistic "success plan" and exhibited anger management problems.

2

psychologist for Giddings State School, Dr. Jessica Varnado, testified that L.C.H. had not passed the SOTP because he was unable to solve his behavioral problems and internalize the treatment goals. When asked whether he should be allowed another opportunity to pass the SOTP, she stated that L.C.H. would not benefit from further SOTP sessions and that she was concerned about returning him to the program because he could misuse the information to manipulate future victims. She further testified that he was at risk to re-offend. Although L.C.H. was no longer exhibiting assaultive behavior, he continued to use threats and intimidation to get what he wanted.

The State also presented evidence that L.C.H. had made sexually-explicit comments to a cafeteria employee at the school, had fantasies of strangling TYC employees, and had continued to engage in disruptive behavior.[2] In Varnado's opinion, L.C.H. was not open and honest during treatment sessions and was unmotivated and unwilling to confront his negative behaviors. Moreover, she testified that L.C.H. was a danger to the TYC staff and that the welfare of the community required her to recommend transfer.

The victim of L.C.H.'s sexual assault testified that the assault had lingering psychological effects, such as her extreme caution around strangers and problems being alone.[3] As part of this questioning, the victim was asked whether she would feel safe if L.C.H. was released into the community. She replied that she would not.

---

[2] Varnado explained that her concern was heightened by the fact that after L.C.H. self-reported his rape fantasies at West Texas, he was transferred to the SOTP within two weeks, yet the same pattern was alleged again almost two years later.

[3] At the transfer hearing, L.C.H. admitted that the victim's description of the assault was accurate. He then apologized.

In response, L.C.H. argued that he should not be transferred to the TDCJ because he was making progress at the TYC and would continue to benefit by remaining there. Furthermore, he asserts that the "record is completely devoid of any programs or benefit that would be achieved by transferring" L.C.H. to the TDCJ.

L.C.H. pointed to his decision to self-report his rape fantasy and plans as evidence of his effort to change. He also argued that his progress in restraining his assaultive behavior and his good record in his academic and vocational classes were evidence that he was making progress. L.C.H. disagreed with the State's contention that he would not benefit from taking the SOTP again, arguing that he should be allowed to retake the SOTP because he should have received treatment at a younger age, but had been sent to West Texas instead.

The district court found that L.C.H. had made only minimal efforts to reform his behavior and continued to act as if he were the victim. Therefore, it ordered him transferred to the TDCJ. This appeal followed.

## DISCUSSION

L.C.H. brings two issues on appeal. First, he argues that the trial court abused its discretion by granting his early transfer to TDCJ. Specifically, he contends that because he was showing progress and because the TYC had programs that could benefit him until the age of twenty-one, the protection of the public could be achieved by allowing him to remain at the TYC. In his second issue, L.C.H. asserts that the district court abused its discretion by allowing victim-impact testimony that impermissibly presented the victim's opinion as to his proper punishment. We will address each issue in turn.

4

**Transfer to TDCJ**

In his first issue, L.C.H. argues that the trial court abused its discretion in granting his early transfer to TDCJ. He argues that he was showing progress and that the TYC had programs that could help him reform his behavior. However, there was no evidence of programs or benefits he would receive at the TDCJ. Thus, he concludes that protection of the public could be achieved by allowing him to remain at the TYC and, as a consequence, that the trial court erred in transferring him. We disagree.

*Standard of review*

In reviewing a district court's decision to transfer a juvenile from the TYC to the TDCJ, we employ an abuse-of-discretion standard. *In re J.L.C.*, 160 S.W.3d 312, 313 (Tex. App.—Dallas 2005, no pet.); *In re C.L.*, 874 S.W.2d 880, 886 (Tex. App.—Austin 1994, no writ). In determining whether there has been an abuse of discretion, we look to see whether the district court acted without reference to guiding rules or principles. *In re J.L.C.*, 160 S.W.3d at 313; *In re C.L.*, 874 S.W.2d at 886. We will only reverse the decision if the court acted in an unreasonable and arbitrary manner. *In re J.L.C.*, 160 S.W.3d at 313.

*Transfer factors*

A child committed to the TYC under the family code may be referred to the juvenile court for approval of the transfer of the child to the TDCJ if the child has not completed his sentence and the child's conduct indicates that the welfare of the community requires the transfer. Tex. Hum.

5

Res. Code Ann. § 61.079 (West 2001).[4] When determining whether to transfer a juvenile to TDCJ, the court may consider the following factors:

(1) the experiences and character of the person before and after commitment to the youth commission,

(2) the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed,

(3) the abilities of the person to contribute to society,

(4) the protection of the victim of the offense or any member of the victim's family,

(5) the recommendations of the youth commission and the prosecuting attorney,

(6) the best interests of the person, and

(7) any other factor relevant to the issue to be decided.

Tex. Fam. Code Ann. § 54.11(k) (West 2002 & Supp. 2004-05). However, the court need not consider all of the listed factors and may assign different weights to the factors it considers. *In re J.L.C.*, 160 S.W.3d at 313-14; *In re C.L.*, 874 S.W.2d at 886.

### Application

In this case, the State presented evidence to support its recommendation that L.C.H. be transferred to the TDCJ. This included testimony that L.C.H. continued to have trouble with sex-offender issues, was at risk to re-offend, had not passed a corrective behavior program, and that the victim of his offense would be fearful if he were released. Based on this testimony, we find that

---

[4] However, the child must be at least sixteen years old and less than twenty-one years old at the time of the transfer hearing. Tex. Hum. Res. Code Ann. § 61.079(a) (West 2001).

there was sufficient evidence presented for the trial court to reasonably conclude that the welfare of the community required L.C.H.'s transfer to TDCJ. *See* Tex. Fam. Code Ann. § 54.11(k); Tex. Hum. Res. Code Ann. § 61.079; *see also* In re J.D.P., 149 S.W.3d 790, 794-96 (Tex. App.—Fort Worth 2004, no pet.). Therefore, the district court did not abuse its discretion. We overrule L.C.H.'s first issue.

**Victim-impact statement**

In his second issue, L.C.H. asserts that the district court erred by allowing victim-impact testimony to be introduced. Specifically, he asserts that the victim impermissibly expressed an opinion concerning the punishment she thought he deserved. We disagree.

When a juvenile court conducts a disposition hearing, a victim is entitled to present pertinent information concerning the impact of the juvenile's offense on the victim and the victim's family. Tex. Fam. Code Ann. § 57.002(a)(5) (West 2002). The victim of an offense constituting delinquent conduct is also entitled to notice of transfer or release hearings concerning the person committed to the TYC for that offense. *Id*. § 54.11(b)(5) (West 2002 & Supp. 2004-05). In addition, the court may consider the protection of the victim or any member of the victim's family in making its determination. *Id*. § 54.11(k).

Although statements regarding the impact of a crime on a victim or a victim's family are admissible, statements regarding their wishes as to a defendant's fate fall beyond the parameters of victim-impact evidence and are inadmissible. *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003). However, the victim in this case simply responded to a question regarding whether she would feel if L.C.H. were released into the community. This question was posed to the victim along

7

with other questions concerning the sexual assault's impact on her and her life.[5] At no point did she opine about what type of punishment should be imposed on L.C.H. or whether he should be transferred. Her statement was properly admitted. *See id*. at 271-72. Thus, the district court did not abuse its discretion in allowing the testimony. We overrule L.C.H.'s second issue.

## CONCLUSION

Having overruled L.C.H.'s issues, we affirm the decision of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: September 23, 2005

---

[5] We also note that protection of the victim of the offense is one of the factors that may be considered in determining whether to transfer a juvenile to the TDCJ. *Id*. § 54.11(k).