

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-431-CV

IN THE MATTER OF J.B.C.

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant J.B.C. appeals the trial court's order transferring him from the custody of the Texas Youth Commission (TYC) to the Institutional Division of the Texas Department of Criminal Justice (TDCJ) for the completion of his forty-year determinate sentence for the offense of murder. In his sole issue,

---

[1] *See* TEX. R. APP. P. 47.4.

J.B.C. complains that the trial court abused its discretion by transferring him to TDCJ. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

A jury found that J.B.C. engaged in delinquent conduct by committing murder. *See In re J.B.C.*, 233 S.W.3d 88, 94 (Tex. App.—Fort Worth 2007, pet. denied) (providing details concerning J.B.C.'s fatally shooting his maternal grandmother in the back of the head with a .32 caliber handgun and affirming trial court's judgment). The trial court sentenced J.B.C. to forty years' confinement with TYC with a possible transfer to TDCJ. *Id.* After J.B.C. turned eighteen years old and had spent approximately eighteen months in the custody of TYC, upon TYC's request, the trial court held a hearing pursuant to section 54.11 of the family code and section 61.079(a) of the human resources code concerning the transfer of J.B.C. to TDCJ. *See* Tex. Fam. Code Ann. § 54.11 (Vernon Supp. 2008); Tex. Hum. Res. Code Ann. § 61.079(a) (Vernon Supp. 2008).

At the November 20, 2007 transfer hearing, the State presented the testimony of TYC court liaison Leonard Cucolo as well as TYC's general file, master file, and security file on J.B.C. Cucolo testified that there are three categories by which J.B.C. was evaluated while at TYC—academics, behavior, and conduct. Cucolo said that although J.B.C. had progressed well in the area

2

of academics, he had progressed poorly both behaviorally and in his conduct. Cucolo testified that J.B.C. had demonstrated "pretty serious behavior problems in the form of an assault or aggressive behavior towards staff and students." Cucolo said that J.B.C. had been confined to the security unit multiple times for being a danger to others. He also said that J.B.C. had a pattern of being disrespectful and verbally aggressive toward staff and students and failed to follow instructions from TYC staff. In all, Cucolo testified that J.B.C. had roughly seventy documented incidents of misconduct or referrals to TYC's security unit. Eighteen of these referrals resulted in his removal from TYC's dorm.

Cucolo also detailed a few of the incidents that led to J.B.C.'s removal to TYC's security unit. One such incident involved J.B.C. "hitting his peer with a closed fist continuously" while yelling out, "White Power." Cucolo stated that J.B.C.'s reference to "White Power" was "gang-related." Cucolo also said that J.B.C. had received a variety of services at TYC, including pharmacological intervention, psychiatric counseling, medication for anxiety, individual counseling, group counseling, and staff counseling. Cucolo said that despite these services, J.B.C. was generally disruptive and tended to blame others for his behavioral problems. In sum, Cucolo said that J.B.C. demonstrated an inability to progress in his re-socialization program.

3

Jeannette Saha, a case manager for TYC who knew and had worked with J.B.C., also testified. She too stated that J.B.C. had progressed well academically. Saha also stated that she believed J.B.C. had progressed both behaviorally and in his conduct. Saha said that she believed J.B.C. benefitted from being at TYC and that she believed specialized treatment would be of significant benefit to him.

Following closing arguments, the court took the case under advisement to review the documentary evidence. After reviewing the written evidence, the trial court advised J.B.C. of his appellate rights and ordered that J.B.C. be transferred to TDCJ to complete his forty-year sentence. This appeal followed.

## III. DISCUSSION

### 1. Minimum Time Requirement

In part of his sole issue, J.B.C. complains that the trial court abused its discretion by ordering him transferred to TDCJ when he had only served roughly half of his three-year minimum time requirement at TYC. We disagree.

The three-year minimum time requirement discussed at the transfer hearing concerns a limitation on TYC's power to release J.B.C. on parole, rather than a statutory minimum time requirement that J.B.C. was to stay at TYC. *See* Tex. Hum. Res. Code Ann. § 61.081 (Vernon Supp. 2008) (providing TYC "may not release the child under supervision without approval of the juvenile

4

court . . . unless . . . the child has served at least . . . 3 years, if the child was sentenced to commitment for conduct constituting . . . a felony of the first degree."). In this case, the minimum time before recommending a transfer from TYC to TDCJ was six months. *See* 37 Tex. Admin. Code § 85.65(e)(2)(B) (2006) (providing that TYC may request a juvenile court hearing for transfer to TDCJ for sentenced offenders who have been convicted of a felony offense and have spent at least six months in a high restriction facility).

Here, it is uncontested that J.B.C. spent more than six months in a high-restriction facility prior to TYC's request that he be transferred to TDCJ. We overrule this part of J.B.C.'s sole issue.

## 2. J.B.C.'s Transfer

In the remainder of his sole issue, J.B.C. complains that the trial judge's decision to transfer him to TDCJ was unreasonable and arbitrary. J.B.C. argues that the trial court abused its discretion by not allowing him to return to TYC and be moved to a specialized dorm where he could potentially progress in the areas of behavior and conduct. We are not persuaded by this argument.

In reviewing the trial court's decision to transfer J.B.C from the custody of TYC to TDCJ, we employ an abuse of discretion standard. *See In re J.D.P.,* 149 S.W.3d 790, 792 (Tex. App.—Fort Worth 2004, no pet.); *In re J.M.O.,* 980 S.W.2d 811, 812–13 (Tex. App.—San Antonio 1998, pet. denied); *K.L.M.*

5

*v. State,* 881 S.W.2d 80, 84 (Tex. App.—Dallas 1994, no writ). We are to review the entire record to determine whether the trial court acted without reference to any guiding rules and principles. *J.D.P.,* 149 S.W.3d at 792. We may not reverse a trial court's decision merely because we disagree with that decision, so long as the trial court acted within its discretionary authority. *In re R.G.*, 994 S.W.2d 309, 312 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).

When a juvenile is given a determinate sentence, upon TYC's request to transfer the juvenile to TDCJ, the trial court is required to hold a hearing pursuant to family code section 54.11. Tex. Fam. Code Ann. § 54.11; *see also* Tex. Hum. Res. Code Ann. § 61.079(a). At the transfer hearing, a trial court "may consider written reports from probation officers, professional court employees, professional consultants, or employees of the Texas Youth Commission, in addition to the testimony of witnesses." Tex. Fam. Code Ann. § 54.11(d). At the conclusion of such a hearing, the trial court may either order the return of the juvenile to TYC or the transfer of the juvenile to the custody of TDCJ for the completion of the individual's sentence. *Id.* § 54.11(i).

In evaluating the evidence and deciding whether to transfer a juvenile to TDCJ, a trial court may consider the following: (1) the experiences and

character of the person before and after commitment to TYC; (2) the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed; (3) the abilities of the person to contribute to society; (4) the protection of the victim of the offense or any member of the victim's family; (5) the recommendations of TYC and the prosecuting attorney; (6) the best interests of the person; and (7) any other relevant factor. *Id*. § 54.11(k). Within its discretion, the trial court may assign different weights to the factors it considers, and the court need not consider every factor. *R.G.*, 994 S.W.2d at 312.

Texas courts of appeals have determined that a trial court does not abuse its discretion by transferring a juvenile to TDCJ even when TYC has recommended that the juvenile be returned to TYC. *See K.L.M.,* 881 S.W.2d at 84–85 (upholding transfer to TDCJ where juvenile's probation officer, treatment supervisor, and TYC's parole supervisor all recommended that juvenile be recommitted to TYC's custody); *In re J.C.D.*, 874 S.W.2d 107, 108–09 (Tex. App.—Austin 1994, no writ) (upholding transfer to TDCJ where TYC recommended return to TYC). Texas courts have also held that a trial court does not abuse its discretion in transferring a juvenile to TDCJ even when evidence suggests that the possibility of more specialized treatment would be obtained by a juvenile's return to TYC. *See In re J.R.W. v. State*, 879 S.W.2d

254, 258 (Tex. App.—Dallas 1994, no writ) (upholding trial court's transfer of juvenile to TDCJ even though a state psychologist recommended that he be sent back to TYC for participation in a specialized program); *In re C.D.R.*, 827 S.W.2d 589, 592–93 (Tex. App.—Houston [1st Dist.] 1992, no writ) (rejecting juvenile's claim that he should have been returned to a TYC specialized sex offender program). Furthermore, a trial court does not abuse its discretion if it considers that a juvenile who has committed a violent offense, if sent back to TYC, would be released from TYC and placed on parole once the juvenile turns twenty-one. *See* Tex. Hum. Res. Code Ann. § 61.084(g) (Vernon Supp. 2008); *see also K.L.M.,* 881 S.W.2d at 85–86 (stating trial court could consider consequence of sending juvenile back to TYC); *see also J.R.W.*, 879 S.W.2d at 258 (stating trial court has no duty to rehabilitate a juvenile, but only makes a determination whether to transfer the juvenile to TDCJ or send the juvenile back to TYC).

At the transfer hearing, the trial court was aware that J.B.C. had previously been found guilty of shooting his maternal grandmother in the back of the head with a .32 caliber handgun. This incident resulted in his placement at TYC. The trial court was also informed that if J.B.C. was returned to TYC, when he turned twenty-one, he would be released from TYC and placed on parole for the remainder of his sentence. The trial court heard evidence that

while at TYC, J.B.C. had assaulted his peers, threatened staff members, and continually failed to take responsibility for his actions. The evidence before the trial court was that of the roughly seventy personal-conduct incidents reported in his eighteen months at TYC, J.B.C. had been involved in five assaults and seven documented incidents of danger to others and had demonstrated participation in gang-related activity. Some of these events even occurred after J.B.C. learned he was being reviewed for possible transfer to TDCJ.

After a complete review of the record, and mindful that one of J.B.C.'s case managers testified that specialized treatment would be of significant benefit to J.B.C., we cannot say that the trial court acted without reference to any guiding rules and principles in declining to send J.B.C. back to TYC and in transferring him from TYC to TDCJ. Accordingly, we overrule the remainder of J.B.C.'s sole issue.

## IV. CONCLUSION

Having overruled J.B.C.'s sole issue, we affirm the trial court's judgment.


PER CURIAM

PANEL: HOLMAN, GARDNER, and MCCOY, JJ.

DELIVERED: October 9, 2008

9