

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-12-00326-CV

**IN THE MATTER OF L.C.**

From the 289th Judicial District Court, Bexar County, Texas
Trial Court No. 2010-JUV-01182
Honorable Carmen Kelsey, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:    Karen Angelini, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  April 3, 2013

AFFIRMED

L.C. appeals the trial court's order transferring him from the Texas Juvenile Justice

Department (TJJD) to the Texas Department of Criminal Justice (TDCJ).  L.C. asserts that the

trial court abused its discretion in ordering his transfer to the TDCJ to serve the remainder of his

sentence because there was insufficient evidence that he posed a continuing threat to the

community.  We affirm the trial court's order.

### BACKGROUND

In 2010, L.C. was arrested after shooting Officer Matthew Martin, an officer with the San

Antonio Police Department.  At the conclusion of L.C.'s trial, a jury found that L.C. engaged in

delinquent conduct by committing the offenses of aggravated assault against a public servant

with a deadly weapon and deadly conduct, and assessed forty-year and ten-year determinate

sentences, respectively. Under these determinate sentences, L.C. entered the TJJD with the possibility of later being transferred to the TDCJ to finish serving his sentence. In May of 2012, with L.C.'s nineteenth birthday approaching, the trial court held a transfer hearing to determine whether L.C. should be released on parole or transferred to the TDCJ for the remainder of his sentence. The State called one witness to testify at the hearing, and L.C. called three witnesses.

Most of the testimony, even from the State's witness, was favorable to L.C. For example, there was testimony that L.C. had successfully completed several programs and group therapy sessions, including a drug and alcohol program and Aggression Replacement Training (ART). Additionally, multiple witnesses discussed L.C.'s academic efforts during his nineteen months at the TJJD, despite his inability to pass the test for his GED, as well as his elected role as student council president. Two TJJD staff members testified that L.C. demonstrated good behavior and often volunteered to mentor other youths and help staff. Further, many of the witnesses testified that they believed L.C. had accepted responsibility for the crimes and felt true empathy for the victim. The court liaison for the TJJD expressed TJJD's recommendation that L.C. be released under supervision for the remainder of his sentence. Many witnesses also expressed L.C.'s plans for a brighter future and desire to mentor children from his community.

Nonetheless, the record also contains testimony that is unfavorable to L.C. For instance, several witnesses acknowledged L.C.'s delinquent record prior to the offenses at issue, including several offenses dating back to 2005. The record also reveals that L.C. was a gang member prior to his detention. Additionally, every witness recognized the serious and violent nature of the offenses L.C. committed against Officer Martin. Finally, TJJD staff members testified that there were fifteen reported behavioral incidents involving L.C.; some were aggressive in nature, and three were reported within the six months preceding the transfer hearing.

An issue of concern to the trial court was whether L.C. had accepted responsibility for the crimes. Although the witnesses testified that they believed L.C. accepted responsibility, all but one witness failed to convey any statement made by L.C. indicating his acceptance of shooting Officer Martin. In fact, two witnesses specifically stated that L.C. told them that he was not the person who shot Officer Martin. One TJJD staff member, who testified that L.C. seemed to genuinely accept responsibility for the crimes and express empathy for the victim, only promoted L.C. to the next stage of rehabilitation because L.C. convinced her that he accepted responsibility for the crimes. The trial court was also concerned that, although the minimum length of time someone must ordinarily serve for the crime of aggravated assault against a public servant is three years, L.C. had served only nineteen months of his sentence.

After both parties rested, the complainant, Officer Martin, made an impact statement to the court. In his statement, Officer Martin focused heavily on L.C.'s failed efforts to obtain his GED. Officer Martin also discussed the fact that gang violence increased in L.C.'s neighborhood since L.C. was detained. He was concerned that it would be difficult for L.C. to avoid involvement with gangs given his previous history as a gang member and the violent nature of the offenses he committed against Officer Martin when he was only sixteen years old. In addition, Officer Martin stated that he had received numerous death threats, some apparently in relation to this case, and that he fears for his safety and the safety of his family at all times. Following Officer Martin's statement, both parties made closing arguments. After hearing the parties' evidence and arguments, the trial court ordered L.C. to be transferred to the TDCJ to serve the remainder of his sentence.

**TRANSFER FROM TJJD TO TDCJ**

## A. Standard of Review

A trial court's decision to transfer a juvenile from TJJD to TDCJ is reviewed for an abuse of discretion. *In re D.L.*, 198 S.W.3d 228, 229 (Tex. App.—San Antonio 2006, pet. denied); *In re J.D.P.*, 149 S.W.3d 790, 792 (Tex. App.—Fort Worth 2004, no pet.). In determining whether the trial court abused its discretion, we review the entire record to determine if the trial court acted arbitrarily, unreasonably, or without reference to any guiding principles or rules. *In re D.L.*, 198 S.W.3d at 229; *In re J.L.C.*, 160 S.W.3d 312, 313 (Tex. App.—Dallas 2005, no pet.). "The trial court's decision will be upheld if the record contains some evidence to support it." *In re N.K.M.*, 387 S.W.3d 859, 864 (Tex. App.—San Antonio 2012, no pet.); *In re D.L.*, 198 S.W.3d at 229.

## B. Texas Family Code

Prior to reaching the age of nineteen, a determination must be made whether a juvenile serving a determinate sentence will be released under supervision or transferred to the TDCJ to complete his sentence. Act of May 5, 2011, 82d Leg., R.S., ch. 85, § 1.007, 2011 Tex. Sess. Law Serv. 366, 420 (West) (codified as amended at TEX. HUM. RES. CODE ANN. § 245.051 (West Supp. 2012)) (redesignating and amending former TEX. HUM. RES. CODE ANN. § 61.081). If the TJJD recommends release of a juvenile who was sentenced for a felony of the first degree and who has not served at least three years in the TJJD, the court must hold a hearing to determine whether the juvenile should be released under supervision or transferred to the TDCJ. *Id.* § 245.051(c)(2); TEX. FAM. CODE ANN. § 54.11(a) (West Supp. 2012). After evidence has been presented and the hearing has concluded, the trial court may order the return of the juvenile to TJJD with or without approval for release under supervision. TEX. FAM. CODE ANN. § 54.11(j).

When conducting a transfer hearing, a trial court may consider written reports provided by "probation officers, professional court employees, professional consultants, or employees of the [Texas Juvenile Justice Department]," as well as the testimony of witnesses. *Id.* § 54.11(d). Additionally, when making a decision whether to approve the TJJD's recommendation for release under supervision, the court may take into account

> [1] the experiences and character of the person before and after commitment to the [TJJD], [2] the nature of the penal offense that the person was found to have committed and the manner in which the offense was committed, [3] the abilities of the person to contribute to society, [4] the protection of the victim of the offense or any member of the victim's family, [5] the recommendations of the [TJJD] and prosecuting attorney, [6] the best interests of the person, and [7] any other factor relevant to the issue to be decided.

*Id.* § 54.11(k). The court is not obliged to consider all of the factors listed, and it may consider relevant factors not listed. *In re N.K.M.*, 387 S.W.3d at 864; *In re J.J.*, 276 S.W.3d 171, 178 (Tex. App.—Austin 2008, pet. denied). Additionally, the court can assign differing weights to the factors considered. *In re N.K.M.*, 387 S.W.3d at 864; *In re J.J.*, 276 S.W.3d at 178.

## C. Analysis

In this case, the trial court heard four witnesses and was provided multiple reports and exhibits for consideration. Both favorable and unfavorable evidence was presented. In its Order of Transfer, the trial court stated it took into consideration the seven factors listed in the Family Code. *See* TEX. FAM. CODE ANN. § 54.11(k). The court also found that L.C. was of "sufficient intellectual abilities and sophistication to be committed at the Institutional Division of the Texas Department of Criminal Justice." In making its determination, the trial court reviewed the witnesses' testimony and reports provided by the TJJD. Ultimately, the trial court found that it was "in the best interest[s] of [L.C.] and of society that [L.C.] be placed in the custody of the [TDCJ] for the remainder of his . . . sentence."

Although L.C. presented favorable testimony regarding his behavior while committed to the TJJD, his academic efforts, his future goals, his acceptance of responsibility for the crimes, and his completion of multiple treatment programs, the record also contains evidence of misbehavior while detained, failure to obtain his GED, and his prior criminal history. Additionally, throughout the hearing, the trial court appeared to place emphasis on the length of the sentences assessed by the jury, the fact that L.C. had not even served the minimum time ordinarily required for one of the offenses he had committed, and the seriousness of the crimes. Indeed, when announcing its decision, the court stated: "[T]he seriousness of the offense is such that I would be derelict in my duties to put this young man on parole." The trial court also appeared to question the witnesses' testimony that L.C. accepted responsibility for the crimes. L.C. gave conflicting statements about his role in the crimes up to a day before the hearing, and the only witness who could affirmatively convey a statement in which L.C. accepted responsibility was the same person who controlled the fate of his progression in treatment. The trial court also considered the protection of Officer Martin and his family, including Officer Martin's statement that he received numerous death threats from L.C.'s previous gang. The trial court was permitted to assign varying amounts of weight to the evidence, as well as believe or disbelieve the witnesses' testimony. *See In re N.K.M.*, 387 S.W.3d at 864; *see also State v. Ross*, 32 S.W.3d 853, 854 (Tex. Crim. App. 2000) (explaining that the fact finder is the sole judge of credibility of witnesses). Therefore, based on the evidence presented, there is some evidence in the record to support the court's decision to transfer L.C. to the TDCJ.

## CONCLUSION

The trial court reviewed all of the materials available and considered every factor listed in section 54.11(k) of the Texas Family Code. Because there is some evidence to support the

court's decision, we conclude the trial court did not abuse its discretion in ordering that L.C. be transferred to the TDCJ. Accordingly, the order of the trial court is affirmed.

Patricia O. Alvarez, Justice