# Court of Appeals

## Tenth Appellate District of Texas

---

10-24-00198-CV

---

In the Matter of P.S., a Juvenile

---

On appeal from the
272nd District Court of Brazos County, Texas
Judge John L. Brick, presiding
Trial Court Cause No. 019-J-22

---

JUSTICE SMITH delivered the opinion of the Court.

### MEMORANDUM OPINION

P.S. appeals the trial court's order transferring him from the Texas Juvenile Justice Department (TJJD) to the Texas Department of Criminal Justice—Institutional Division (TDCJ) to complete the remainder of his four-year determinate sentence for two counts of aggravated sexual assault of a child. On appeal, P.S. asserts the trial court abused its discretion by transferring him to adult prison rather than releasing him to the Parole Division of TDCJ. We affirm the trial court's order.

## BACKGROUND

The State filed a petition on December 30, 2022, alleging that P.S., who was born on June 2, 2005, sexually assaulted his adoptive brother and sister, who were five years old at the time of the 2021 offenses. The State requested the court find that P.S. engaged in delinquent conduct. After an adjudication hearing held May 31, 2023, the court declared P.S. a child engaged in delinquent conduct. The court sentenced him to ten years' confinement, probated under determinate sentencing for a period of two years. About four months later, the State moved to modify sentencing due to P.S.'s failure to comply with the terms of his probation.

On January 5, 2024, the trial court modified the disposition order and placed P.S. in the custody of TJJD for a determinate period of four years. Just prior to P.S.'s nineteenth birthday, TJJD referred him to the trial court for a hearing to determine if he will be transferred to the Institutional Division or the Parole Division of TDCJ. After the hearing, by order dated May 29, 2024, the trial court ordered P.S. transferred to the Institutional Division of TDCJ to serve the remainder of his four-year determinate sentence. P.S. appealed the transfer order.

## TRANSFER FROM TJJD TO TDCJ

In his sole issue, P.S. asserts the trial court abused its discretion by transferring him to adult prison rather than releasing him to the Parole Division of TDCJ. He contends that continuity of sex offender and substance abuse counseling is necessary to reduce the possibility of recidivism. He argues that imprisonment will disrupt and possibly prevent the needed counseling, but parole would provide continuity of counseling.

### Standard of Review

A trial court's decision to transfer a juvenile from TJJD to TDCJ is reviewed for an abuse of discretion. *In re J.D.P.*, 149 S.W.3d 790, 792 (Tex. App.—Fort Worth 2004, no pet.). We are to review the entire record to determine whether the trial court acted arbitrarily or without reference to any guiding rules and principles. *In re N.K.M.*, 387 S.W.3d 859, 864 (Tex. App.— San Antonio 2012, no pet.). The trial court's decision will be upheld if the record contains some evidence to support it. *Id.*

### Applicable Law

After a juvenile with a determinate sentence reaches the age of sixteen, but before reaching the age of nineteen, TJJD may request an order approving the transfer of the juvenile to TDCJ if the sentence has not been completed and the juvenile poses a continuing risk to the community's welfare. TEX. HUM.

RES. CODE ANN. § 244.014(a). The juvenile court must conduct a hearing to make this determination. TEX. FAM. CODE ANN. § 54.11(a). When conducting a transfer hearing, a trial court may consider written reports provided by probation officers, professional consultants, and employees of TJJD, in addition to the testimony of witnesses. *Id.* § 54.11(d). In making its determination, the court may consider the experiences and character of the person before and after commitment to TJJD, the nature of the penal offense the person was found to have committed and the manner in which the offense was committed, the abilities of the person to contribute to society, the protection of the victim of the offense or any member of the victim's family, the recommendations of TJJD and the prosecuting attorney, the best interests of the person, and any other relevant factor. *Id.* § 54.11(k). The court is not obliged to consider all of the factors listed, and it may consider relevant factors not listed. *See In re N.K.M.*, 387 S.W.3d at 864. Additionally, the court can assign differing weights to the factors considered. *Id.*

**Analysis**

Dr. Lisa Watts performed a psychological evaluation on P.S. in late 2022. Testing suggested a high level of maladjustment. She diagnosed P.S. as having a significant mood disturbance, cannabis use disorder, poor judgment, depression, and impulsivity.

Agustin Gutierrez testified that he provided sex offender counseling for P.S. from September 2023 until early January 2024 while he was in juvenile detention. P.S. did not provide enough detail to accurately assess whether P.S. was applying himself to treatment. He later stated that P.S. was unable to give him details on rudimentary matters, indicating that P.S. had not made much progress while he was in outpatient treatment. While P.S. "did own up to his offense," he did not show empathy for his victims.

Jeanie Norrid, a juvenile probation officer, completed a juvenile court investigation report in December 2023. She determined that P.S.'s overall risk to reoffend was moderate and that he was in need of the intensive and structured environment that TJJD could provide.

Carrie Tipton, who conducts intake evaluations at the TJJD orientation unit where P.S. was assigned, evaluated P.S. on March 29, 2024 to determine current psychological functioning and to identify any specialized treatment needs. Based on a July 2023 collateral report, she noted that P.S. lacks empathy. She explained that P.S. was not able to provide even basic information regarding the 2021 offenses or his prior sex offender treatment, which he attended from February 2023 to July 2023. Consistent with a July 2023 assessment, he scored high on the Juvenile Sex Offender Assessment Protocol-II (J-SOAP-II), indicating a high likelihood that he will re-offend. He

was recommended for intensive sex offender treatment. Due to his age at the time he arrived at the orientation unit, P.S. did not have sufficient time to complete the sex offender treatment program. P.S. also has a high need for substance abuse treatment. P.S. reported using drugs at the time of committing his offenses, so drug use has a direct correlation to his sexual offenses. His inability to recall his offenses, which is due to drug use, can be a risk factor in obtaining adequate treatment.

In her report, Tipton described P.S. as having no boundaries and being manipulative. Further, he minimizes his actions and struggles with sexual deviant behavior and self-control. She concluded that P.S. presented as a moderate risk for future violence and aggression.

Daniell Krall, clinical director of the Gainesville State School, a TJJD facility, testified regarding P.S.'s discipline referrals while housed at TJJD. On three occasions, he covered a light in his room that came on at 6:00 a.m. Also, he was written up for being in a case manager's office unescorted. Krall explained that, if the court transfers P.S. to TDCJ parole, he recommends placing him on super intensive supervision, which is the most restrictive parole program offered. That includes use of an electronic ankle monitor, stringent restrictions on where he is allowed to go, and regular visits to a parole officer. He also recommends participation in sex offender and substance abuse

programs, and that P.S. get a job. Krall testified that, if P.S. is ordered to TDCJ, they will provide him with sex offender and substance abuse treatment.

Tami Coy, TJJD/TDCJ liaison, created a comprehensive summary of P.S.'s history with TJJD, signed May 22, 2024. As of March 2024, P.S. was at stage one, the lowest level, in his progress in reducing risk factors for recidivism and increasing protective factors related to positive community reintegration. Because his commitment to TJJD was so close to his nineteenth birthday, he did not have the opportunity to completely address salient risk factors or practice learned skills that would help him in the community. Coy stated that TJJD lacks sufficient information to make a reasonably informed recommendation in this matter. If placed on parole, TJJD recommends P.S. be assigned to the "Super Intensive Supervision Program," the most restrictive parole program TDCJ has. It requires use of an electronic ankle monitor and restrictions on where he is allowed to go. P.S. also needs sex offender programming, substance abuse programming, and gainful employment.

Deborah Pope, a long-time friend of P.S.'s mother, kept P.S. periodically throughout his childhood. P.S. lived with her while he was on probation in 2023. He violated some conditions of his probation, including leaving home without permission and taking her vehicle without permission. Substance abuse was the biggest problem while he was on probation. She explained that

P.S. has some welding skills, and she believes he could get a job if out on parole. Also, she testified that his previous therapist agreed to provide treatment again if he is released on parole. Pope explained that P.S. did exhibit empathy for the victims when speaking to her. She intends for him to live with her while on parole, and she will provide structure and hold him accountable.

The trial court heard the egregious nature of the crimes P.S. committed and that he did not show empathy for his very young victims, except when speaking to Pope. Before he was adjudicated, P.S. was described as highly maladjusted. In the short time he was in sex offender treatment, he did not make much progress. While living in the most structured environment available outside of TJJD, he was unable to comply with several terms of probation. More than three years after the offenses, and in spite of TJJD intervention, assessments still indicated a high likelihood that he would re-offend and that he was a moderate risk for future violence and aggression.

While TJJD declined to recommend either prison or parole, it did recommend that, if placed on parole, P.S. should be assigned to the most restrictive TDCJ parole program. P.S. needs structure, sex offender treatment, and substance abuse treatment. Although Pope offered to take P.S. into her home again, and vowed to provide structure and help him obtain treatment and employment, that arrangement has already proven to be unsuccessful.

P.S. asserts that imprisonment will disrupt, perhaps even prevent, the sex offender and substance abuse treatment he needs. But Krall testified that TDCJ will provide the needed treatment during incarceration. Furthermore, the trial court was entitled to give more weight to the seriousness of the underlying offenses, P.S.'s potential for re-offending, his failure to make progress on any risk factors, and his need for a structured environment. *See In re N.K.M.*, 387 S.W.3d at 864.

Because there is some evidence to support the trial court's decision to transfer P.S. to TDCJ as opposed to releasing him on parole, we hold there was no abuse of discretion. *Id*. We overrule P.S.'s sole issue.

## CONCLUSION

Having found no abuse of discretion, we affirm the trial court's order transferring P.S. to the institutional division of TDCJ for the remainder of his four-year determinate sentence.

STEVE SMITH
Justice

OPINION DELIVERED and FILED: June 26, 2025

Before Chief Justice Johnson,
    Justice Smith, and
    Justice Harris
Affirmed
CV06



In the Matter of P.S., a Juvenile