COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-08-379-CV

 

 

IN THE MATTER OF C.C.B.                                                                   

 

 

                                              ------------

 

           FROM THE 323RD
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.      Introduction








Appellant C.C.B. (ACalvin@)[2]
appeals the trial court=s modified order of disposition
committing him to the Texas Youth Commission (ATYC@).  In two issues, Calvin argues that the trial
court abused its discretion by failing to order further medical evaluations to
determine the extent of the harm caused by his concussions and that he received
ineffective assistance of counsel by virtue of his attorney=s
failure to request further testing and investigate a possible Apost-concussion
syndrome@
diagnosis.  We affirm the disposition of
the trial court.

II.     Factual and procedural
background

In his initial appearance in court, Calvin was
adjudicated delinquent for unauthorized use of a motor vehicle, a state jail
felony offense.  Tex. Penal Code Ann. ' 31.07
(Vernon 2003).  The trial court placed
Calvin on probation for one year, starting November 2, 2007.  Calvin additionally had an aggravated assault
offense, dating back to October 2007, reduced and probated as a misdemeanor on
January 14, 2008.

On the night of July 18, 2008, officers caught
Calvin and some of his friends attempting to break into a vehicle.  Calvin managed to break free from the officer
arresting him.  Two days later on July
20, 2008, officers stopped Calvin and two other boys; Calvin told the officers
his name was ATerry Willbanks.@  Calvin then fled from the officers and led a
chase through yards and over fences. 
Officers used pepper spray to finally take Calvin into custody, and the
chase resulted in an injury to an officer.








On August 8, 2008, the State filed a first
amended motion to modify disposition, alleging that Calvin=s
conduct had violated his court-ordered probation.  The motion stated that Calvin=s
actions violated several laws, specifically his conduct in (1) fleeing Officer
C.D. Riley during an arrest, (2) fleeing Officer J. Parham during an arrest,
and (3) intentionally giving a false or fictitious name to a peace officer.[3]  Tex. Penal Code Ann. '' 38.02
(Vernon Supp. 2008), 38.04 (Vernon 2003). 
This conduct constituted Calvin=s
seventh referral to Juvenile Probation Services.








At the adjudication phase of his hearing, Calvin
admitted to violating the terms of his probation and committing the offenses
asserted by the State.  Calvin stipulated
to evidence supporting the allegations in the State=s
petition.  At the disposition phase of
his hearing, the State offered Calvin=s social
history, psychological evaluation, and resource staffing report without
objection.  The social history report
gave various facts about Calvin=s
juvenile history, including his history with alcohol and his completion of the
Family Partnership Program (AFPP@) two
weeks prior to the July 2008 offenses. 
The social history included a brief psychiatric evaluation section detailing
Calvin=s
transfer to Millwood, a psychiatric facility, in April 2007 due to an incident
where Calvin threw a knife at his sister and A[tore]
up the house.@ 
The report stated that while being treated at Millwood, Calvin was
diagnosed with Abipolar [disorder], disruptive
behavior [disorder], and depression.@  The social history also stated that Calvin Arefused
to take his prescribed Lexapro, Respridol, and Cogentin@
medications, and that his mother refused to return for further doctor=s
visits.

The social history stated that Calvin=s mother
was Aoverwhelmed
by her parenting responsibilities@ and had
been Aunsuccessful@ in
using what she had learned with the assigned counselor and juvenile probation
officer.  At the end of the social
history, the report stated that Calvin had demonstrated that he was Aa threat
to his home and this community@ and
that TYC was a Amuch more secure environment@ to
serve Calvin=s needs.








Dr. Sheree Gallagher, a clinical psychologist,
authored the psychological report offered by the State.  Calvin=s
probation officer had requested the evaluation to determine Calvin=s treatment
options.  Dr. Gallagher=s report
gave an overview of Calvin=s
background and mental status based on his interview and psychological
tests.  Her report stated that his thought
processes were Alucid, logical, and concrete@ and
that his short- and long-term memory was intact.  Calvin=s scores
for verbal tasks were Aaverage to below average,@ and his
scores for non-verbal tasks were consistently average; both tests revealed
impulsive behavior that hindered his social judgment.  Dr. Gallagher expressed concern about Calvin=s
history of six concussions between 2005 and 2007, but indicated she did not
have medical records to understand the extent of his injuries.

Dr. Gallagher did not come to a definitive conclusion
on the source of Calvin=s Aacting-out@
behavior; rather, she stated in her summary that, if brain damage was found,
the diagnosis could be a APersonality Change due to
Multiple Head Injuries.@ 
Dr. Gallagher then stated that if Ano
neurological impairment is found, the diagnosis may more accurately be Conduct
Disorder, Adolescent Onset Type.@[4]  Dr. Gallagher gave several recommendations,
including Aa comprehensive neurological
evaluation@ for his previous head traumas,
a Aneuropsychological
evaluation@ to determine if a possible
impairment may have affected his ability to control his impulses and anger, and
Aresidential
treatment including intensive psychotherapy@ for his
issues of loss and abandonment.








During the hearing, Calvin=s
attorney asked him why he was not taking his prescribed medications, and Calvin
testified that he did not like the way they made him feel Alike a
zombie.@  The trial court asked Calvin about his six
concussions, and he stated that he had several head injuries from Amessing
around, . . . playing tag, jumping over a tennis net . . . riding [his] bike
and being hit and getting head injuries there.@  Calvin confirmed that the hospital treated
him after each concussion and explained his injuries to him.

Calvin=s attorney
asked Calvin if he felt Asometimes as though there might
be something wrong with [his] brain@ or if
he thought that he was not Athinking
clearly@ or
understanding what was going on around him. 
Calvin testified, ANo, I understand what is going
on around me.  Most of the time, I can=t really
concentrate on most things, though.@  Calvin then clarified this statement by
stating that he Acan=t keep focused@ and
that this started to occur after the concussions.

Calvin=s
attorney addressed Calvin=s history of head injuries in
his closing argument, stating 

[i]f in fact the psychological report is
accurate, it would seem important before the Court to make a decision about
what to do to have the neurological testing done to see if some of these law
violations may have something to do with his mental status which has
disintegrated perhaps because of these concussions, so I would urge the Court
to think about doing that.








The State asked for commitment to TYC in its
closing argument, citing Calvin=s
previous opportunities for rehabilitation and his continued threat to the
community.  The trial court found that it
was in the child=s best interest to revoke his
probation and commit him to TYC until he reached the age of nineteen.  Calvin appeals this disposition.

III.     Order
of further neurological testing by trial court

In his first issue, Calvin argues that the trial
court abused its discretion by committing him to TYC Awithout
further testing@ despite his Ahistory
of blunt trauma injuries to the head.@  Calvin argues that a residential in-patient
program would have been a viable alternative, if a neurological examination had
revealed Apathological damage to various
areas of the brain.@

A.     Standard
of Review








A juvenile court has broad discretion to
determine a suitable disposition for a child who has been adjudicated as having
engaged in delinquent conduct.  In re
H.G., 993 S.W.2d 211, 213 (Tex. App.CSan
Antonio 1999, no pet.).  An abuse of
discretion occurs when the juvenile court acts unreasonably or arbitrarily
without reference to any guiding rules or principles.  In re K.J.N., 103 S.W.3d 465, 465B66 (Tex.
App.CSan
Antonio 2003, no pet.).  In appropriate
cases, legal and factual sufficiency are relevant factors in assessing whether
the trial court abused its discretion.  In
re C.J.H., 79 S.W.3d 698, 702 (Tex. App.CFort
Worth 2002, no pet.).  Merely because a
trial court may decide a matter within its discretion in a different manner
than an appellate court would in a similar circumstance does not demonstrate
that an abuse of discretion has occurred. 
Id. at 702.

An abuse of discretion does not occur where the
trial court bases its decision on conflicting evidence.  In re B.N.F., 120 S.W.3d 873, 877 (Tex.
App.CFort
Worth 2003, no pet.).  Further, an abuse
of discretion does not occur as long as some evidence of substantive and
probative character exists to support the trial court=s
decision.  In re C.J.H., 79 S.W.3d
at 702.  In conducting the review, we
engage in a two-pronged analysis, (1) did the trial court have sufficient
information upon which to exercise its discretion, and (2) did the trial court
err in its application of discretion?  See
In re A.D., 287 S.W.3d 356, 366 (Tex. App.CTexarkana
2009, pet. filed.); In re M.A.C., 999 S.W.2d 442, 446 (Tex. App.CEl Paso
1999, no pet.).

B.     Applicable
Law








A trial court may modify a juvenile=s disposition
if the court, after a hearing to modify disposition, finds by a preponderance
of the evidence that the child violated a reasonable and lawful order of the
court.  Tex. Fam. Code Ann. '
54.05(f) (Vernon 2008).  The trial court
has broad discretion to modify the disposition of a delinquency adjudication if
the child has been adjudicated delinquent for committing a felony or
misdemeanor on at least one previous occasion and the conduct which is the
basis of the current adjudication occurred after the date of the previous
adjudication.  Tex. Fam. Code Ann. ' 54.05(f);
In re C.J.H., 79 S.W.3d at 702. 
The violation of any one condition of probation is sufficient for a
trial court to enter an order modifying the juvenile=s prior
disposition.  See In re S.G.V.,
No. 04-05-00605-CV, 2006 WL 923576, at *3 (Tex. App.CSan
Antonio April 5, 2006, no pet.) (mem. op.).

The Texas Family Code permits a trial court to
commit a child to TYC in a modification of a disposition if it makes the
required findings that: (A) it is in the child=s best
interest to be placed outside the home; (B) reasonable efforts were made to
prevent or eliminate the need for the child=s
removal from the home and to make it possible for the child to return to the
child=s home;
and (C) the child, in the child=s home,
cannot be provided the quality of care and level of support and supervision
that the child needs to meet the conditions of probation.  Tex. Fam. Code Ann. '
54.05(m)(1).

C.     Analysis

Calvin does not dispute that he violated his
probation order or that the trial court had the authority to modify his
disposition.  Because he asserts error in
the trial court=s discretion by committing him
to TYC, we will briefly review the sufficiency of the evidence supporting the
trial court=s findings under section
54.04(m)(1).








Considering Calvin=s best
interests, the trial court heard ample evidence about Calvin=s lack
of structure and supervision at home, including his mother=s
testimony that Calvin ran away from home in October and December of 2007 and
Calvin=s
testimony about non-compliance at school, throwing parties, and drinking two
bottles of vodka over two days prior to his detention.  The court also heard about his history of
referrals for theft, assault, and running away and also his probation
violations including failing to report in January and his three offenses in
July.  See In re J.L.C., No.
02-06-00252-CV, 2007 WL 1168474, at *5 (Tex. App.CFort
Worth 2007, no pet.) (mem. op.) (stating that the best interests of children
who engage in serious and repeated delinquent conduct are superseded to the
extent they conflict with public safety).

Examining the reasonable efforts to prevent
Calvin=s
removal from home, the trial court heard evidence of Calvin=s newest
violations occurring shortly after his completion of FPP and evidence of the
failed attempts to enroll Calvin in Tarrant County Advocate Program (ATCAP@).  The trial court also received evidence that
Calvin=s mother
refused other services and did not pursue Calvin=s
prescription drug treatment with his doctor because she did not Awant to
waste their time.@








The trial court heard ample evidence that Calvin
could not have been provided the care, support, and supervision required for
his probation while at home.  The
psychological evaluation stated that the home structure is Achaotic,@ and
Calvin described his home life by saying Athere is
always screaming and cleaning@ and his
siblings are Aalways making a mess.@  Calvin=s mother
is a single parent and gives Calvin adult responsibilities, such as being a
care giver to his disabled brother and being a Afather
figure@ to his
other siblings.  The social history
stated that his mother was unsuccessful at using what she had learned from FPP
counselors and Calvin=s probation officer.  Though Calvin=s mother
is unemployed and spends time at home, she testified that she often must leave
Calvin unsupervised to attend doctor=s visits
for her youngest son=s spina bifida condition.  Calvin=s mother
stated that she was attempting to move the family away from Calvin=s
trouble-making friends, but was not currently able to secure housing.  There was sufficient evidence for the trial
court=s
decision to commit Calvin to TYC rather than to place him in an alternative
treatment program.  See In re D.W.,
02-08-00243-CV, 2009 WL 1815779, at *2 (Tex. App.CFort
Worth June 25, 2009, no pet. h.) (mem. op.) (holding that evidence of improper
supervision and juvenile=s need for structure supported
trial court=s action in committing D.W. to
TYC rather than residential program for juvenile sex offenders).








Furthermore, with respect to Calvin=s
argument that the trial court should have ordered further testing, the trial
court had the power to order a mental examination on its own motion at any
stage of the juvenile proceedings, but was not statutorily required to do so.  See In re J.K.N., 115 S.W.3d 166, 168B69 (Tex.
App.CFort
Worth 2003, no pet.) (holding that trial court was not required to sua sponte
order examination of juvenile=s mental
state); In re E.M.R., 55 S.W.3d 712, 719 (Tex. App.CCorpus
Christi 2001, no pet.) (same).  The
psychological evaluation in the State=s
exhibit suggested that Calvin would benefit from a comprehensive neurological
evaluation; however, a possible diagnosis of neurological impairment would not
necessarily have altered the trial court=s
findings that commitment to TYC was in Calvin=s best
interest, that reasonable efforts had been made to prevent removal from his
home, and that he could not have been provided care and support in his
home.  See Tex. Fam. Code Ann. '
54.05(m)(1)(A)B(C).  Further, the trial court=s
decision did not deny Calvin mental health services with his placement at
TYC.  See In re J.D.P.,149 S.W.3d
790, 794B95 (Tex.
App.CFort
Worth 2004, no pet.) (discussing extensive psychiatric services the juvenile
received at TYC).  The trial court had
ample evidence of Calvin=s missed opportunities for
rehabilitation and his continued threat to his community to support its
decision to commit Calvin to TYC, and the trial court did not abuse its
discretion.  In re M.A.C., 999
S.W.2d at 446.  Therefore, we overrule
Calvin=s first
issue.








IV.    Ineffective Assistance of
Counsel

In his second issue, Calvin argues that he
received ineffective assistance of counsel because his attorney did not
investigate Calvin=s potential neurological
condition or request further evaluation.  


A.     Applicable
law

A juvenile has a constitutional and statutory
right to effective assistance of counsel in a juvenile adjudication
proceeding.  See In re S.C., 229
S.W.3d 837, 842B43 (Tex. App.CTexarkana
2007, pet. denied).  To establish
ineffective assistance of counsel, an appellant must show by a preponderance of
the evidence that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); In re S.C., 229 S.W.3d at 843. 








Under the first Strickland prong, we look
to the totality of the representation and the particular circumstances of each
case.  Thompson v. State, 9 S.W.3d
808, 813 (Tex. Crim. App. 1999).  The
issue is whether counsel=s assistance was reasonable
under all the circumstances and prevailing professional norms at the time of
the alleged error.  See Strickland,
466 U.S. 688B89, 104 S. Ct. at 2065.  Review of counsel=s representation
is highly deferential, and the reviewing court indulges a strong presumption
that counsel=s conduct fell within a wide
range of reasonable representation.  Salinas,
163 S.W.3d at 740; Mallet v. State, 65 S.W.3d 59, 63 (Tex. Crim. App.
2001).  A reviewing court will rarely be
in a position on direct appeal to fairly evaluate the merits of an ineffective
assistance claim.  Thompson, 9
S.W.3d at 813B14.  AIn the
majority of cases, the record on direct appeal is undeveloped and cannot
adequately reflect the motives behind trial counsel=s
actions.@  Salinas, 163 S.W.3d at 740 (quoting Mallett,
65 S.W.3d at 63).  To overcome the
presumption of reasonable professional assistance, Aany
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.@  Id. (quoting Thompson, 9 S.W.3d
at 813).  It is not appropriate for an
appellate court to simply infer ineffective assistance based upon unclear
portions of the record.  Mata v. State,
226 S.W.3d 425, 432 (Tex. Crim. App. 2007).








The second prong of Strickland requires a
showing that counsel=s errors were so serious that
they deprived the defendant of a fair trial, i.e., a trial with a reliable
result.  Strickland, 466 U.S. at
687, 104 S. Ct. at 2064.  In other words,
appellant must show there is a reasonable probability that, but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Id. at 694, 104 S. Ct.
at 2068.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of
the proceeding in which the result is being challenged.  Id. at 697, 104 S. Ct. at 2070.

B.     Analysis

In this case, Calvin argues that his attorney
failed to investigate Calvin=s head
injuries as potential mitigating evidence, despite having knowledge of Calvin=s
neurological concerns from Dr. Gallagher=s
psychological evaluation submitted two weeks prior to the hearing.[5]  Calvin argues that his counsel should have
followed through on Dr. Gallagher=s
recommendations for neurological testing and should have prepared for the
questioning of his own client about his neurological status.








Calvin has presented no evidence rebutting the
presumption that counsel=s failure to investigate further
was trial strategy.  See Jones v.
State, 170 S.W.3d 772, 775B76 (Tex.
App.CWaco
2005, pet. ref=d) (holding that appellant must
demonstrate that counsel=s failure to request jury
instruction was not trial strategy). 
Calvin=s motion for a new trial did not
directly address his trial counsel=s
ineffectiveness; rather, the motion alleged legal and factual insufficiency and
merely described the mother=s
assertion of a breakdown in the attorney-client relationship.  See Martin v. State, No. 06-08-00190-CR,
2009 WL 2340665, at *4 (Tex. App.CTexarkana
July 31, 2009, no pet. h.) (mem. op., not designated for publication) (holding
that appellant failed to make an ineffective counsel complaint in her motion
for new trial; thus, there was no record of a hearing conducted to explain the
acts or omissions of trial counsel); see also Chavarri v. State, Nos.
02-08-00099-CR, 02-08-00100-CR, 2009 WL 885954, at *2 (Tex. App.CFort
Worth April 2, 2009, no pet. h.) (mem. op., not designated for publication)
(stating that the appellant failed to develop the record by filing a motion for
new trial to establish why his counsel did not hire a mitigation specialist and
whether his counsel investigated the possibility of any mitigation
evidence).  Additionally, the record
contains no statement or testimony from defense counsel regarding what he did.  Without a record of why trial counsel failed
to act, Calvin cannot carry his burden to overcome the presumption that failure
to investigate further was trial strategy. 
Jones, 170 S.W.3d at 775B76; see
also Maldonado v. State, No. 14-03-00074-CR, 2004 WL 234377, at *3 (Tex.
App.CHouston
[14th Dist.] Feb. 10, 2004, pet. ref=d) (mem.
op., not designated for publication) (stating that a reviewing court cannot
denounce counsel as ineffective absent some evidence of his strategy). 













Strickland does not establish that
an attorney must investigate Aevery
conceivable line of mitigating evidence,@ but
neither does it establish that a cursory investigation is sufficient where a
reasonable attorney would make further inquiry. 
See Wiggins, 539 U.S. at 528, 533, 123 S. Ct. at 2538, 2541.  The trial record only reveals that evidence
that Calvin=s potential brain damage was
offered to the court through Dr. Gallagher=s
recommendations in the psychological evaluation and through questioning of
Calvin himself about his concussions and understanding of the proceedings.  The record does not affirmatively show his
attorney=s
ineffectiveness in regards to this inquiry. 
Considering evidence of Calvin=s known
medical conditions, including bipolar disorder, disruptive behavior disorder,
and depression, his attorney may have not pursued the neurological testing
recommendation as a reasonable trial strategy because Calvin=s
impulsive Aacting out@
behavior could have been attributed to any or all of his diagnosed
conditions.  The record shows Calvin=s
attorney elicited testimony from Calvin about his concussions and discussed the
potential brain damage in his closing argument; we cannot infer from the record
that the attorney=s treatment of this evidence was
unreasonable.  See Mata,
226 S.W.3d at 432.  Considering all of
the circumstances in this case and the undeveloped record, Calvin=s
attorney=s
decision to not pursue neurological testing fell within the range of reasonable
and professional assistance.  See Bone
v. State, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002) (overruling
ineffectiveness claim and stating that it must not be built on retrospective
speculation, but must be firmly founded in the record); see also Scheanette
v. State, 144 S.W.3d 503, 510 (Tex. Crim. App. 2004) (concluding that it
must presume counsel acted pursuant to reasonable trial strategy because it
could only speculate as to why counsel acted or failed to act), cert. denied,
543 U.S. 1059 (2005).

Calvin=s
ineffectiveness claim fails under the first Strickland prong; thus, we
do not address the second prong. 
Accordingly, we overrule Calvin=s second
issue. 

V.     Conclusion

Having overruled both of Calvin=s
issues, we affirm the judgment of the trial court.

PER
CURIAM

 

PANEL: GARDNER, MCCOY,
and MEIER, JJ.

 

DELIVERED:  September 17, 2009











[1]See Tex. R. App. P. 47.4.





[2]To protect the privacy of
the child, we refer to him by pseudonym. 
Tex. R. App. P. 9.8(c).





[3]The motion also contained
four paragraphs asserting that Calvin attempted to commit or committed two
burglaries, but the State waived those cases.





[4]AConduct disorder@ is defined as Aa behavior disorder of
childhood or adolescence characterized by a pattern of conduct in which either
the basic rights of others or the societal norms or rules appropriate for a
certain age are violated.@ American Heritage
Stedman=s Medical Dictionary
(2002), available at http://dictionary.reference.com/browse/conduct%20disorder.






[5]Citing Wiggins v.
Smith , Calvin argues that counsel had a duty to make reasonable
investigations or to make a reasonable decision that makes particular
investigations unnecessary.  539 U.S.
510, 521B22, 123 S. Ct. 2527, 2535
(2003).